## CALDWELL v. SCIVALLY et al.

No. 16223—Opinion Filed Jan. 26, 1926.

Rehearing Denied May 11, 1926.

### 1. Indians—Lands—Adverse Possession not Available Against Grantee of Heirs.

Where S. enters on tribal Indian lands, under a rental agreement with a member or members of such tribe, and afterwards the United States government assumes control o. such lands, and S. continues paying his rentals to the United States government, and thereafter the lands so rented by S. are allotted to B., such allotment by the government is notice to S. of the change of title, and if thereafter S. continues to occupy such lands. he will be presumed to so occupy them as the tenant of B., and in the event of B.'s death prior to the allotment, then S. becomes the tenant of the heirs at law of the deceased allottee, or their grantee, and "adverse possession" is not available as a defense in an action by C., the grantee and owner of the legal title, for rents and profits, and to quiet title in such grantee.

### 2. Same—Limitation of Actions—Defense not Available.

Under a state of facts as set forth in syllabus par. No. 1 hereof, the statute of limitations does not run against subsequent grantees, and in favor of S., S. having taken possession of the lands under a rental agreement with the original or rightful owners.

### 3. Same—Adverse Possession—Limitation of Actions—Defenses not Available Against Action to Quiet Title Where Plaintiff Suffered to Share Possession.

Where C. purchases. lands of which S. is in possession under a valid rental agreement with the original owners of the land, and C., a.ter duly filing his deed for record, goes upon the land and establishes a camp and erects a workshop, and C.'s servants and employes go upon the lands and live upon the land for a period of one year, and prospect the land for minerals, the lands being unfit for cultivation, and sink shafts thereon, such acts of C. are notice to the tenant that C. claims and is asserting an interest in the lands, and in the absence of any pro-

test by S. or any act openly done by S. disloyal to C.'s title, precludes the defense of the statute of limitations or "adverse title," by S. in an action by C. to quiet title as against S. and his grantees.

### 4. Adverse Possession—Requisites.

The doctrine of adverse possession is to be taken strictly. Such a possession is not made out by inference, but by clear and positive proof. Every presumption is i favor of possession in subordination to the title of the true owner, and possession to be adverse, must be open. continuous and exclusive, with a claim of ownership such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but against all titles and claimants.

### 5. Limitation o`, Actions—Sufficiency as Defense—Adverse Possession.

In order to enable a defendant to avail himself of the statute of limitations, he must plead such specific acts of disloyalty to the title, or acts of dominion giving adverse character to his possession as will preclude all want of knowledge thereof on the part of the owner.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Murray County; A. C. Barrett, Judge.

Action by W. E. Caldwell against Robert F. Scivally and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

A. M. Beets and Paul G. Darrough, for plaintiff in error.

Cruce & Potter, for defendants in error.

Opinion by RUTH, C. W. E. Caldwell will be referred to herein as plaintiff, and Robert F. Scivally will be referred to as defendant.

Plaintiff in May, 1918, filed his petition in the district court of Murray county against the defendant and others. praying that pla' ntiff be declared the owner of an undivided one-half interest in and to certain

lands, and that his title be quieted therein, and that defendants be enjoined :rom asserting any title adverse to plaintiff, and that certain deeds and mortgages be canceled, and the lands partitioned or sold, and also prays judgment for the rents and profits of the lands while wrongfully held by defendants.

The petition with exhibits A to Z, both inclusive, is very voluminous, and for the purposes of this opinion it is unnecessary to make a detailed statement of the contents of the petition.

Plaintiff alleges the lands claimed by him were a portion of the allotment of one Allington ,Baker, deceased, a full-blood Choctaw Indian, and he secured title by warranty deed dated March 19, 1904, executed by John J. Baker and Martha McGee, heirs at law on the paternal side of Allington Baker. Black James files answer by way of general denial, and further claims to hold a mortgage on 3,400 acres of land, including a portion of the lands claimed by plaintiff, and such mortgage was executed by Jesse C. Moore and Ada May ·Moore. Jesse C. Moore answers by general denial, disclaiming any interest in certain of the lands, and states he acquired 320 acres of the lands set forth in plaintiff's petition (describing the same), by warranty deed dated March 19, 1921, from W. W. Corbin and Lela Corbin. W. W. Corbin files a general denial, and further ·admits the lands in question were the allotment of Allington Baker, a full-blood Choctaw; that Baker at the time of his death in what is now Bryan county, in October, 1902, was a minor; that he died intestate and without issue, and after admitting numerous exhibits attached to plaintiff's petition, alleges he acquired the lands by warranty deed from Robert F. Scivally and Mittie Scivally. The answer of Robert F. and Mittie Scivally is, first, a general denial; second, an admission that the lands involved were the allotment of Allington Baker. a full-blood Choctaw, who died in October. 1902. As a further defense, the answer recites:

"Further answering, these defendants allege that when the property involved in this action was allotted, the title vested in the heirs of Allington Baker free of restrictions, and that any claim, right, title, or interest that the plaintiff, W. E. Caldwell, might have acquired by virtue of the two conveyances alleged in the petition, dated the 19th day of March. 1904, is barred by limitations: that these defendants and their vendees have been in the sole, exclusive, and undisputed possession of said property, using the same for a pasture since prior to the execution of any conveyance dated in 1904, and that the plaintiff is barred by the statute of limitation from now asserting any· right, title, or interest in the property for the reason that neither he, nor any tenant, nor anyone acting for him, nor any employe have had possession thereof; that these defendants held the same for a number of years paying taxes thereon, and claiming ownership thereof, that they have not ever recognized or acknowledged any claim that the plaintiff had to said property and did not know of the same until the institution of this suit."

Plaintiff, denying generally the allegations in the answer, further states that defendants have recognized his title by repeatedly .trying to purchase the lands from him since 1904; that defendants recognized plaintiff as the owner of an undivided onehalf interest in` the Baker allotment, and defendants purchased the other one-half interest from other heirs of the allottee, and defendants have never exercised such possession as would constitute notice of adverse title to plaintiff's lands. After hearing had, the court rendered a general judgment as follows:

"That the plaintiff take nothing by reason of the action aforesaid, and that the defendants have judgment for their costs."

From this judgment plaintiff appeals and brings this case here for review upon petition in error and case-made, and assigns as error that the judgment is not supported by the evidence, is contrary to the law and evidence; errors of law occurring at the trial; and in entering judgment; and errors of law in admitting incompetent evidence and excluding competent evidence.

The land in controversy was purchased by plaintiff in 1904, and it is conceded that where a cause of action arose prior to statehood, and while the Arkansas law was in force in the Indian Territory, and the Arkansas statute of limitations began to run, the change to statehood does not operate to apply a new statute of limitations. The statute as fixed by Mansfield's Digest of the Statutes of Arkansas is the controlling statute. Section 4471, Mansfield's Digest, provides in part:

"And all suits, either in law or equity, for the recovery of any lands. tenements, or hereditaments, shall be had and sued within seven years next after title or cause of action accrued and no time after seven years."

For a better understanding of the· evidence, we shall set forth the essential parts of the testimony more with regard to the cronological occurrence of events than oth-

erwise, and thus prevent overlapping. All the lands herein contended for, and referred to in this opinion, were in the Arbuckle Mountains; were rough, rocky lands, unfit for cultivation, and fit only for rough pasturage. Defendant testified that in 1900 he went upon the lands, then open unallotted Indian lands; that he made an agreement with two Indians, Tom Atkins, and an Indian by the name of Browne, for the pasturage of his cattle, and paid them certain rentals per acre. After about two years, the United States government sent its agent to Oklahoma, and an agreement was entered into between the defendant and the government, whereby defendant paid the government ten cents per acre per annum, for the pasturage privilege, and continued to pay this sum until 1904. In 1904 these lands were allotted to various members of the Choctaw Tribe of Indians, and the lands contended for by plaintiff were a portion of Allington Baker's allotment. Allington Baker died in 1902, leaving no issue, brother or sister, and under the laws of Arkansas in force in the territory, his lands ascended in equal shares to the paternal and maternal branches. On March 19, 1904, John J. Baker and Martha McGee, as heirs at law of Allington Baker, conveyed the lands by warranty deed to plaintiff, and the record shows that immediately upon securing the deed, plaintiff and Mr. Wollover, who was manager of plaintiff's mill at Purcell, Okla., went upon the land. Plaintiff employed an old Colorado prospector to come upon the land and prospect for minerals. A camp was established, a blacksmith shop erected, and plaintiff paid the prospector $3 and grub per day, and supplies. The prospector was on the land one year; dug numerous holes; sunk one shaft near the blacksmith shop, and plaintiff paid him approximately $1,500 for his services. The record contains photographs taken on the land in 1905, six showing two tents and the blacksmith shop, with plaintiff Wollover, the prospector, and several other persons on the land. On October 11, 1911, defendant secured a deed to this allotment from one Eliza Lewis, who claimed to be the sister and only heir at law of Allington Baker, and defendant immediately filed his action against this plaintiff, for the purpose of having title quieted in this land in Robert F. Scivally, this defendant, who admits that suit was dismissed before trial by advice of his counsel. The filing of that action completely negatives the allegations of the defendants' answer in this action, wherein they allege:

"That they have not ever recognized or acknowledged any claim that the plaintiff

had to said property, and did not know of same at the institution of this suit." (This suit was filed May 18, 1922.

At the trial of this cause, plaintiff produced and offered in evidence the petition in Scivally v. Caldwell, filed in 1911, and verified by Scivally for the purpose of proving that defendant did recognize plaintiff's claim. The evidence was excluded by the court, and in so excluding it, we think the court erred, for while the verified petition might not be conclusive against defendant, it was a circumstance that might and should have been considered by the court, in determining the issues presented by defendant's answer.

It appears the defendant, after going upon the land in 1900, fenced large acreage of lands in the Arbuckle Mountains, and has erected about 50 miles of fence, and the evidence discloses the Allington Baker allotment was about the center of this enclosure, and had never been fenced and could not be fenced because of the topography of the land, and there was no fence within a mile of this allotment. After dismissing his action in 1911, this defendant appears to have attempted to establish a "squatter sovereignty" over all these lands, disposing of them without, so far as the record shows, ever having acquired title or possession except such as he acquired as lessee under the two Indians mentioned and the United States government, which terminated in 1904. In November, 1917, defendant entered into a mineral mining lease with Boyd B. Horsman, wherein defendant leased 1,610 acres of land, including the lands in controversy. On June 25, 1919, in an action to determine heirship, the county court of Bryan county determined John J. Baker, this plaintiff's grantor, was the sole heir at law of Allington Baker on the paternal side, Martha McGee having died intestate without issue, and the court found one Walton Billy and others the heirs at law on the maternal side. Scivally testifies he purchased the undivided one-half interest of the heirs on the maternal side "after I had been sued for it just as I am in this case." Defendant testifies he has paid taxes on this land in controversy since 1911 (amount not stated), and plaintiff says since 1911, the lands were so intermingled on the tax rolls he could never ascertain what his half of the tax amounted to.

As a further evidence of defendant's recognition of plaintiff's claim to lands within the Scivally enclosure, H. A. Ledbetter, an attorney of Ardmore, deposed in part as follows:

"It also appeared Mr. W. E. Caldwell owned some land within Scivally's ranch, and Mr. Scivally wanted to adjust the matter with Mr. Caldwell, so far as the rental value of it was concerned."

That Scivally called on Ledbetter to see if the adjustment could be made. This was in 1919, and Ledbetter wrote two lettters to Caldwell, one on July 1, 1919, wherein he enclosed a lease to Scivally from Caldwell, and requested Caldwell to sign the lease and attach draft on Scivally to lease, and send through plaintiff's bank. The next letter by Ledbetter is dated July 19, 1919, and recited in part as follows:

"With reference to the land owned by you in what is known as the R. F. Scivally ranch, Mr. Scivally says that he will buy your land on the figure mentioned by you, which is $12.50 per acre."

The letter then states the terms, one-half cash, one-half secured by note and mortgage payable one year from date bearing 8 per cent. interest, and requests plaintiff, who was then in Louisville, Ky., to execute deed and prepare note and mortgage, attach draft on Scivally, and forward through plaintiff's bank. Scivally testifies, however, that this was with relation to Caldwell's mountain land near Turner Falls, and that he bought it from Caldwell.

Defendant cites the opinion filed December 19, 1922, in Harris v. Grayson, wherein it was said:

"If more than seven years after acquiring title such person or his heirs bring an action at law or in equity to recover said lands, and the statute of limitations is pleaded as a bar of the right of action, the burden of proof rests upon the plaintiff to show facts that take it out of the bar of the statute of limitations."

Defendant admits a rehearing was granted by this court in the cited case, and we find Harris et al. v. Grayson, reported in 90 Okla. 147, 216 Pac. 446, and the question of the statute of limitations is not passed upon, and this is the only case cited in defendants' brief.

Defendant states he knew of the "prospecting" around there and of shafts being sunk, but he never paid any attention to them. Plaintiff and his manager, Wollover, testified that they never saw Scivally upon plaintiff's property, that there was not a fence within a mile of the property, and they did not know Scivally or anyone else was claiming ownership of the land.

Kirk et al. v. Smith ex dem. Penn., 9 Wheaton (U. S.) 241, was an action appealed to the Supreme Court of the United States from the Circuit Court of Pennsylvania, and involved title to lands granted to William Penn on March 4, 1681, by Charles II. The statute of limitations was involved. Mr. Chief Justice Marshall, delivering the opinion of the court, refers to the law of England adopted in 1705, being the law then under consideration, which recited: "That seven years' quiet possession shall give an unquestionable right, etc.," says:

"It must be governed by those rules which apply to acts of limitations generally. One of these which has been recognized in the courts of England, and in all others where the rules established in these courts have been adopted, is, that possession, to give title, must be adversary. The word is not, indeed, to be found in the statutes; but the plainest dictates of common justice require that it should be implied. It would shock the sense of right which must be felt equally by legislators and by judges, if a possession which was permissive, and entirely consistent with the title of another, should silently bar that title. * * * To allow a different construction would be to make the statute of limitations a statute for the encouragement of fraud . A statute to enable one man to steal the title of another. * * *"

There appears to have been in that case a somewhat analogous condition. There a large tract was surveyed with the smaller tract embraced therein. In the instant case, 50 miles of fence were run over these mountains, and the Allington Baker allotment was enclosed by this fence, but no fence was within a mile of the allotment.

Marshall, C. J., in the cited case said:

"The survey of a large tract of land cannot be considered as an entry on a smaller tract within its lines."

The defendant entered on the Choctaw tribal lands as tenant of two Indians in 1900, and paid rent to them until perhaps 1902 or 1903, when the government assumed control of the lands, and he continued as tenant of the United States government until 1904, when the government allotted these lands to Baker, and the defendant ceased paying rent.

This allotment was notice to the world of Baker's title, or title in his heirs at law and their grantees. Defendant knew of the establishment of plaintiff's camp and the prospecting for minerals, and made no protest. He recognized plaintiff's claim by suing plaintiff in 1911. He recognized the title of the heirs of Baker in the maternal line when he was sued by them in 1919, and purchased their one-half interest in the Baker allotment, and there is no evidence of ad-

verse possession that can reasonably sustain the judgment of the trial court.

In Flesher v. Callahan, 32 Okla. 283, 122 Pac. 489, this court said:

"(2) The doctrine of adverse possession is to be taken strictly. Such a possession is not to be made out by inference, but by clear and positive proof. Every presumption is in favor of possession in subordination to the title of the true owner.

"(3) A possession, to be adverse, must be open, continuous and exclusive, with a claim of ownership, such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but against all titles and claimants." Citing a long line of authorities, not necessary to be herein set forth.

In Acton v. Culbertson, 38 Okla. 280, 132 Pac. 812, this court said:

"In order to enable defendant to avail himself of the statute of limitations, he must plead such specific acts of disloyalty to the title or acts of dominion giving adverse character to his possession as will preclude all want of knowledge thereof on the part of the owner." See Reniker v. Kansas City, Ft. S. & M. Ry. Co., 55 Okla. 759, 155 Pac. 255; Wade v. Crouch, 14 Okla. 593, 78 Pac. 91; Sharon v. Tucker, 144 U. S. 533, 12 Sup. Ct. 720; Jackson v. Sharp, 9 Johns (N. Y.) 163, 6 Am. Dec. 267; Thomas v. Morgan, 113 Okla. 212, 247 Pac. ——.

A multiplication of authorities can serve no good purpose. Defendant has wholy failed to bring himself within the rules herein announced, and the record is entirely barren of testimony reasonably tending to sustain the judgment of the trial court.

The judgment of the trial court is therefore reversed, with directions to the trial court to enter judgment decreeing plaintiff to be the owner of an undivided one-half interest in the Allington Baker allotment as set forth in the plaintiff's petition, and to grant the plaintiff a new trial, and determine and adjudicate the rights of all the parties, and proceed in all matters, not inconsistent with the views herein expressed.

By the Court: It is so ordered.

Note.—See under (1) 2 C. J. p. 133 § 227 (Anno); 31 C. J. p. 510 § 70 (Anno). (2) 2 C. J. p. 132 § 226. (3) 2 C. J. p. 120 § 199. (4) 2 C. J. p. 75 § 57; p. 80 §64; p. 118 § 198; p. 122 § 206; p. 265 § 588; p. 276 § 621. (5) 2 C. J. pp. 259, 260 § 574.