## DAVIS et al. v. MANHARD.

No. 23568.   April 30, 1935.

Twyford & Smith, William J. Crowe, and John W. Swinford, for plaintiffs in error.

I. L. Harris, for defendant in error.

CORN, J. The parties will be referred to as they appeared in the trial court, in reverse to the order herein.

This action was instituted in the district court of Oklahoma county on the 11th day of June, 1931, by Nellie Manhard filing a petition against Robert J. Lee and J. C. Davis to quiet title to lot 2, block 2, in Prior's Elm Grove addition to Oklahoma City. The defendant Lee filed a disclaimer, and the defendant Davis filed an answer and cross-petition. The case was tried to the court and judgment rendered in favor of the plaintiff quieting her title, and defendant prosecutes this appeal.

The defendant sets out seven assignments of error in his petition in error, but in his brief argues the same under three propositions.

Proposition 1. The court erred in holding void the deed from Robert J. Lee to J. C. Davis, his codefendant.

Proposition 2. The plaintiff was not shown to be in possession of the premises at the time the deed from Lee to Davis was executed.

Proposition 3. Lee was in possession of the premises for more than a year before the grant to Davis, and therefore the conveyance is valid.

The facts, as disclosed by the record in this case, show that Robert J. Lee purchased the lot in question from Thomas R. Anderson in the year 1917; that same was used by him for a store yard for lumber and materials for some time, until about the year 1923, when a flood washed the lumber and materials away.

His testimony was as follows:·

"Q. Well, then, how long after you started this material yard did you keep it there? A. Why, I kept the material yard there until the water washed it away and I don't think it was but a short time before the water washed it away. Q. When the flood came along, it washed some of this material away? A. Yes, just washed off everything clean. Q. Then, what did you do with it? A. I didn't do anything with it; I didn't put anything more down there."

Lee took no further interest in said lot, failed thereafter to pay taxes assessed against the same, and as a result said lot was sold by the county treasurer at a resale on the 24th day of April, 1924, to John T. Phelan, and on the 24th day of April, 1929, said Phelan conveyed said property to Annie G. Mahoney by warranty deed, and on the 14th day of August, 1929, Annie G. Mahoney conveyed said property to the plaintiff herein, Nellie Manhard.

In 1927, G. A. Moore, a brother-in-law of the plaintiff, moved on the property and remained in the actual possession of said lot continuously from that time on, as a tenant of Nellie Manhard, the title remaining in her name, although the testimony discloses that there was an oral contract between her and Moore whereby Moore had contracted for the property, the deed to be delivered when all the payments were made. The evidence not disclosing any specified time for the performance of the contract, nor a definite time of payment, Moore built a fence around it, built a cave or storm cellar on the lot and the adjacent one, and otherwise improved the same. The evidence shows that Moore and his wife owned two lots adjacent to this lot and enclosed it with their property.

On the 3rd day of February, 1931, the defendant J. C. Davis filed in the county clerk's office his only claim of title, a purported quitclaim deed of that date from Robert J. Lee to himself. Thereafter and on the 26th day of May, 1931, Nellie Manhard, being in possession of said lot, obtained a quitclaim deed from Robert J. Lee, and within less than a month thereafter commenced this suit against Davis and Lee to quiet title.

It is further shown by the record that the plaintiff herein paid the taxes on the said lot for a number of years, was in peaceable possession of the same, and her title unquestioned by any one prior to the date of the filing of the quitclaim deed in the county clerk's office by the defendant J. C. Davis.

We are of the opinion that the finding of facts by the trial court is substantially correct, wherein he stated:

"The Court: Now, the court further finds as a fact that in the year 1927, the plaintiff who then held under a conveyance from the holder of the tax deed, to which reference is heretofore made, was in possession of the real estate involved herein through one who was to be placed in possession under a contract of sale and held

the open, notorious, adverse, and exclusive possession thereof, continuously from then until now. That plaintiff was so in possession of the premises at the time of the execution of the quitclaim deed from Lee to the defendant Davis. That such deed was a violation of the laws of the state of Oklahoma and was void as an instrument attempting to convey title. That subsequent thereto, the plaintiff acquired title from Lee by quitclaim deed which has been introduced in evidence as exhibit 2; that plaintiff is entitled to have her title quieted as against the defendants, Davis and Lee, and it is the judgment of the court that the plaintiff have her title quieted as against the defendant, that they and each of them be forever barred of claiming or asserting any right, title or interest in or to the property as against the plaintiff, acquired prior to this date."

We will discuss the three propositions submitted by the defendant together. Counsel for defendant used considerable space discussing the resale tax deed originally issued to Phelan, and sets up many imperfections attributed to it, and from it concludes that Nellie Manhard is a trespasser, in possession without any right.

As to the validity of the tax deed, we do not express any opinion, but what discussion of said tax deed we do make will be only for the purpose of determining whether the plaintiff was a trespasser as contended by the defendant. It is not necessary that the plaintiff have a good, perfect, or merchantable title at the time of the execution of the deed from Lee to Davis in order to render said deed void as champertous. All that is required is that she be in possession, adversely claiming title, and that Lee and Davis did not have possession within the years prior to execution of the said deed, nor had taken the rents and profits therefrom within a period of one year from its execution. The evidence as disclosed by the record is clear that Davis was never in possession and that Lee had not been in possession since about the year 1923, that the plaintiff had been in possession continuously since 1927, and we are of the opinion that the tax deed under which she was claiming title to said land was sufficient for the purpose of excluding her from being a trespasser. Defendant made no pretense of any claim to this property prior to the 3rd day of February, 1931, the date he obtained his deed.

Adverse possession has been defined by this court to mean:

"* * * Open, notorious, and exclusive with a claim of ownership, such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but against all titles and claimants." Caldwell v. Scivally, 118 Okla. 1, 246 P. 879.

In Flesher v. Callahan et al., 32 Okla. 283, 122 P. 489, the opinion being written by Mr. Justice Sharp, the court therein said:

"To bring the case within the prohibition of the statute construed in the foregoing opinions, what proof, then, is there of an adverse holding, whether under color of title or not? * * *

"'Possession, to be adverse, must be open, visible, continuous, and exclusive, with a claim of ownership. * * *'"

This definition of adverse possession is that adopted by the Supreme Court of the United States, Sharon v. Tucker, 144 U. S. 533, 36 L. Ed. 532.

In this case the records show Lee had abandoned the property, that it had been sold at resale for taxes, that Phelan had purchased it and had transferred it to Annie G. Mahoney, and that Annie G. Mahoney had transferred it to Nellie Manhard, that Nellie Manhard had actually paid the taxes on it since the time she purchased it, and that G. D. Moore, her brother-in-law, was in the actual possession of the property, living on it, erecting improvements on it, and in every way using it as his own, or as the property of his landlord, Nellie Manhard, and that this had continued since 1927.

We, therefore, hold that the requirements necessary to show adverse possession were fully established in this case.

The law presumes that if one is the owner of land, he will take the rents and profits at least yearly, and if he allows another to remain in possession for more than one year, claiming adversely and without paying any rent, he is required to litigate direct with the occupant; he cannot pass title on to a stranger.

This court has, however, passed directly on the question raised. In the opinion Sanders et al. v. Leforce et al., 93 Okla. 128, 219 P. 925, we find:

"A deed by a grantor out of possession of real property who has not been in possession for a year next preceding date of conveyance, or has not within a year taken rents and profits, or those under whom he

claims, is void as against any person or persons in adverse possession."

In Lackey et al. v. Wagner, 89 Okla. 48, 213 P. 742, where the facts in that case are practically the same as in this case, this court held, in the first paragraph of the syllabus:

"Where the holder of the legal title to real estate, who is out of possession, conveys such title to a third person who is not in possession, in contemplation of law, as between the grantor, grantee, and the person in possession, holding adversely, claiming to be the owner thereof, the title remains in the grantor or original proprietor, and the person in possession has a right to purchase in such title during the pendency of an action commenced against him for possession by this grantor for the benefit of the champertous grantee."

The judgment of the trial court is affirmed.

McNEILL, C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.