## WIRICK et al. v. NANCE.

No. 25801.    Jan. 28. 1936.

Rehearing Denied Nov. 10, 1936.

Application for Leave to File Second Petition for Rehearing Denied Dec. 8, 1936.

A. D. Cochran, E. T. Noble, Kenneth H. Lott, John L. Norman, and Bleakmore & Barry, for plaintiffs in error.

Geo. S. Ramsey, Villard Martin, and Garrett Logan, for plaintiff in error E. H. Moore.

Wimbish & Wimbish, for defendants in error.

WELCH, J. Bertha Pauline Nance, the owner by inheritance of an undivided interest in 320 acres of land in Pontotoc county, brought an action in the district court of said county to recover said interest for the use and benefit of Robert J. Wimbish, to whom she had theretofore conveyed such interest, and for the use and benefit of Claude Logsdon, to whom Wimbish had conveyed an interest. From a judgment allowing such recovery, the defendants, claiming various interests in the land, have appealed. The parties will be referred to as plaintiff and defendants, as they appeared in the trial court.

Shortly after suit was brought, and prior to the trial thereof, the plaintiff, Bertha Pauline Nance, conveyed her interest in the real estate to the defendants, parties in possession claiming legal title thereto. In Lackey v. Wagner, 89 Okla. 48, 213 P. 742, it is held:

"Where the holder of the legal title to real estate who is out of possession conveys such title to a third person who is not in possession, in contemplation of law, as between the grantor, grantee, and the person in possession, holding adversely, claiming to be the owner thereof, the title remains in the grantor or original proprietor, and the person in possession has a right to purchase in such title during the pendency of an action commenced against him for possession by this grantor for the benefit of the champertous grantee."

See, also, Miller v. Grayson, 64 Okla. 122, 166 P. 1077; International Land Co. v. Smith, 103 Okla. 101, 229 P. 601; Brady v. McCrory, 108 Okla. 40, 233 P. 734, and Davis v. Manhard, 172 Okla. 85, 45 P. (2d) 1095.

So, if the former deed from Bertha Pauline Nance to Wimbish was champertous and void, then her deed to defendants after commencement of the action was valid, and the defendants must prevail; while if the Wimbish deed was valid, then the deed to defendants was of no effect and the plaintiff must prevail. It thus appears at the outset that the principal question to be determined herein is whether the deed executed by Bertha Pauline Nance to Robert J. Wimbish was champertous.

The primary facts are not in controversy. The cause was submitted largely upon an agreed statement of facts. It is shown that Bertha Pauline Nance had never at any time been in manual or physical possession of any portion of the land. Plaintiff's theory, and evidently the theory of the trial court in rendering judgment in plaintiff's favor, was that Bertha Pauline Nance, as one of the heirs, was the owner of an interest and was a tenant in common with the other heirs, and therefore had at all times remained in constructive possession of her inherited interest in the land, and that therefore, being in such possession, there was no violation of section 1939, O. S. 1931, relating to champerty when she executed her deed to Wimbish. It therefore appears that in determining whether the deed to Wimbish was champertous it is necessary only for us to determine whether Bertha Pauline Nance was in constructive possession of the real estate as a tenant in common within the period of one year prior to the execution of such deed.

We recite the material facts as follows: The land involved was owned by James B. Woodroof, who died intestate in 1913, leaving as his only heirs at law his widow, Laura A. Woodroof, and five children, Glenn T. W. Woodroof, Ardis Woodroof, Esther Woodroof, now Clark, Clive Woodroof, and Ina Mae Woodroof. Thereafter Laura A. Woodroof married J. L. Nance, and to said union the plaintiff, Bertha Pauline Nance, was born on August 15, 1915.

Thereafter Laura A. Nance, formerly Woodroof, died intestate on October 17, 1921, leaving as her only heirs at law her husband, J. L. Nance, her daughter, Bertha Pauline Nance, plaintiff herein, and the five Woodroof children above named. No administration was had on the estates of either of the said deceased persons, and Bertha Pauline Nance apparently never asserted any claim in and to said land prior to the execution of her deed to Wimbish on September 11, 1933.

After the death of Laura A. Nance, formerly Woodroof, and in 1922, J. L. Nance executed his quitclaim deed covering all of his interest in the land to the five Woodroof children. Thereafter Glenn T. W. Woodroof sought partition of the real estate in the district court of Pontotoc county, and on March 22, 1922, that court found that the five Woodroof children were the sole owners of the land, as alleged in the petition for partition, and ordered the same partitioned and divided among them, setting aside certain acreage to each of them. Immediately thereafter Clive Woodroof and Ina Mae Woodroof, now Harper, entered into the sole and exclusive possession of the land partitioned to them, and have remained in such possession ever since, never at any time by word, act, or conduct recognizing any other person as having any claim or interest therein.

On March 27, 1922, Glenn T. W. Woodroof, Ardis Woodroof, and Esther Woodroof executed their mortgage covering their partitioned acreage, as the sole and exclusive

owners thereof. Thereafter said mortgage was foreclosed and the defendant, Edward L. Schauer, purchased the same at sheriff's sale and procured a sheriff's deed therefor in 1928, and immediately took possession thereof, and has remained in such possession ever since claiming to be the sole and exclusive owner thereof, and without in any manner recognizing any other person as owning an interest therein.

On September 11, 1933, Bertha Pauline Nance, the plaintiff here, executed her deed to Robert J. Wimbish covering her inherited interest in all of the land. This suit was filed September 19, 1933. On November 6, 1933, the plaintiff, Bertha Pauline Nance, executed and delivered to the defendant Edward L. Schauer her quitclaim deed conveying all her right, title, and interest in and to the portion of the land then in the possession of the defendant Schauer as the exclusive owner under the sheriff's deed. On the same date a like deed was executed by the plaintiff to each of the defendants, Ina Mae Harper, nee Woodroof, and Clive Woodroof, conveying to each of these defendants the respective portion of the land claimed and possessed by each, respectively.

The record also shows that a tax deed had been issued to R. L. Savery conveying the land awarded to Clive Woodroof in the partition proceedings, and that Savery had executed a deed thereto to H. L. Wirick, and that Clive Woodroof in December, 1933, took from Wirick a deed to the land, reserving in Wirick certain oil, gas, and mineral rights. Others of the defendants claim certain leasehold interests in the land under conveyances from certain defendants herein, which interests are not material to our consideration here. The land was not restricted Indian land, and, therefore, no federal restriction question is involved.

Thus it appears that for years prior to the execution of the deed from Bertha Pauline Nance to Wimbish, the defendants had been in the open and notorious possession of the land, with their occupancy and possession and the deed records and court records giving evidence of their claim of absolute ownership to the exclusion of the plaintiff, Bertha Pauline Nance, or any other person.

As applied to these facts, the rule followed in Hurie v. Quigg, 121 Okla. 80, 247 P. 677, is controlling and directs us to the conclusion that the deed of plaintiff Nance to Wimbish was champertous and void under section 1939, O. S. 1931.

In the Hurie Case, supra, the land involved was inherited by four heirs; the estate was administered upon and the county court found that three of them were the sole heirs; there was in fact a fourth heir elsewhere; the land was conveyed to the three heirs to each of them a full third; they went into open and notorious possession under their deeds and the court proceedings; some years later the fourth heir conveyed his or her inherited interest in the land; and the question arose whether that deed was champertous and void, since the fourth heir, the grantor, had never been in possession nor taken rents or profits. This court there reviewed the authorities and considered most of the contentions here presented. That opinion takes due notice of the rule that heirs inheriting undivided interests in land are tenants in common; and of the general rule that in the absence of a contrary showing, possession by one tenant in common is possession by each of the others and is not adverse. But that opinion also pointed out and emphasized the well-recognized rule that one such tenant in common may enter upon and claim and occupy and hold all of the land adverse to the others. Then, in keeping with that latter rule, but without doing violence to the rules first noticed, this court in the Hurie Case held that the record presented a case of three tenants in common actually holding the land adversely to the fourth tenant in common. It was pointed out that the three tenants in common held the lands as absolute owners, actually openly and notoriously; that the deeds under which they held indicated that full ownership would be claimed thereunder; that the court proceedings, upon the face thereof, justified such claim of absolute ownership; that the three did so claim and that such claim was openly evidenced by the occupancy and by the court records and deed records; that therefore the grantee of the fourth tenant in common held a deed which was champertous and void under the statute, since the grantor had not been in possession or taken rents or profits.

The facts in that case are quite similar to the facts in the case at bar. Here the whole record conclusively shows that the possession of the defendants was at all times open, visible, continuous, and exclusive with claims of absolute ownership, such as would undoubtedly constitute notice to parties seeking information upon the subject that the premises were not held in subordination to any title or claim of others, but against all claimants of title. The public records

of the judicial proceedings had in the district court in the matter of the partition proceedings, and in the matter of the foreclosure and in the matter and manner of the giving and recording of the mortgage and the various other instruments of conveyance, were all open to inspection, and were notorious in their character. It cannot be doubted that the most casual inspection of the public records or inquiry of the parties in possession by either the plaintiff or Wimbish at the time the deed was given would have unquestionably disclosed the adverse holding of the real estate by the defendants.

The rule in Hurie v. Quigg, supra, was followed in Warner v. Wickizer, 146 Okla. 232, 294 P. 130; and the same conclusion was reached in Johnston v. Dill, 165 Okla. 165, 25 P. (2d) 283.

The judgment of the trial court in the case at bar is defended largely upon the theory that the defendants took title as tenants in common with the plaintiff, and that their several entries into possession of the land were not adverse to plaintiff's title, and that the acts and things done in possession were not sufficient to constitute ouster.

The trial court's action in granting plaintiff relief appears to have been based largely upon the court's construction of the case of Aldrich v. Hinds, 110 Okla. 53, 235 P. 1100, and particularly paragraph 3 of the syllabus thereof, and upon certain expressions contained in the opinion.

We have made a careful examination of the Hinds Case, and observe that the conclusion therein was reached either because of the fact that adverse possession during the period of federal restriction could not militate against the plaintiff's rights, or because there was not clear and positive or convincing proof of adverse possession sufficient to overcome the presumption in favor of possession in subordination to the title of the true owner as discussed in Flesher v. Callahan, 32 Okla. 283, 122 P. 489.

And there is cited Arthur v. Coyne, 32 Okla. 527, 122 P. 688. An examination of that case discloses that the question of adverse possession is not therein involved, but the case does involve the question of adverse title, and is authority only for the general rule that a tenant in common who acquires title adverse to his cotenants will be held to take the same in trust for the benefit of the cotenant.

Cited also is the case of Chouteau v. Chouteau, 49 Okla. 105, 152 P. 373. We find this rule there stated in paragraph 2 of the syllabus as follows:

"The mere possession of a tenant in common, no matter how full and complete, does not operate as an ouster of his cotenant, or amount to adverse possession as against the claim of his cotenant. There must be something to show a denial or repudiation of his cotenant's rights, or the possession will be deemed to be held in subordination to the rights of the cotenant."

It is to be seen in the Chouteau Case, supra, that the court therein concluded that there were no facts shown which would overcome the presumption that the tenant in common held for the benefit of his co-heirs and cotenants. No facts constituting ouster or adverse possession are there shown. Quite a different fact situation is shown here, as is also true in Hurie v. Quigg, supra.

There is further cited the case of Longfellow v. Byrne, 68 Okla. 314, 174 P. 745. That case goes no further than to follow the general rule and to hold that a tenant in common in possession is presumed to hold possession for the benefit of all tenants in common, and to make it plain that there is not shown in that case any facts which would constitute adverse possession. Such possession was defined by this court in Flesher v. Callahan, supra, in the third paragraph of the syllabus as follows:

"A possession, to be adverse, must be open, visible, continuous, and exclusive, with a claim of ownership such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but against all titles and claimants."

See, also, Caldwell v. Scivally, 118 Okla. 1, 246 P. 879.

The record in the case at bar shows ample evidence of such holding and possession by the defendants not in subordination to any title of Bertha Pauline Nance, but adverse to any claim on her part.

There is further cited the case of Howard v. Manning, 79 Okla. 165, 192 P. 358. An examination of that case discloses nothing further than a recognition of the rules applied in the other cited cases.

In the Manning Case, supra, the court quotes from Washburn on Real Property (6th Ed.) vol. 1, sec. 858:

"That an entry or re-entry made by one is deemed to be the entry of all, unless

clearly shown to be adverse toward his cotenants; so livery of seisin made to one is made to all; and the occupation by one cotenant is prima facie an occupation by all."

But there is here a recognition of the rule that such possession by one may be shown to be in fact adverse to the other.

The cases thus examined clearly show that this court has uniformly recognized the general rules as quoted from paragraph 2 of the syllabus in Chouteau v. Chouteau, supra, and as stated in paragraph 2 of the syllabus in Flesher v. Callahan, supra, as follows:

"The doctrine of adverse possession is to be taken strictly. Such a possession is not to be made out by inference, but by clear and positive proof. Every presumption is in favor of possession in subordination to the title of the true owner."

See, also, Ludey v. Pure Oil Co., 157 Okla. 1, 11 P. (2d) 102.

But here again it is recognized that such possession may be shown to be adverse, if the proof thereof is presented in full measure.

Thus it will be seen that the general rule to the effect that the possession of a tenant in common is presumed to be, or is as a matter of law, the possession of the other tenants in common, is always subject to affirmative proof to the contrary, which when made by clear and positive proof overcomes the presumption. See Beall v. McMenemy, 63 Neb. 70, 88 N. W. 134-135, where the court used the following language:

"As a general rule, the entry and possession of one tenant in common is the entry and possession of all, and therefore not adverse. But the rule has no application where there has been an actual ouster of the cotenant, or some act equivalent thereto. 1 Am. & Eng. Enc. Law (2d Ed.) p. 801, and cases there cited. Ouster is a question of fact, which involves to some extent the intention and motives of the party in possession."

We have seen from the facts here that at the time of the execution of the deed from the plaintiff to Wimbish, the defendant Clive Woodroof was in possession of a certain part of the realty and the defendant Ina Mae Harper, nee Woodroof, was in possession of other parts thereof, and the defendant Edward L. Schauer was in possession of certain other or the remaining portions thereof. The two named Woodroof children entered into possession of the land under claim of absolute and exclusive ownership by virtue of the partition proceedings in 1922, and had remained continuously, notoriously, openly, and exclusively in such possession at all times from that date. The defendant Schauer entered into possession in 1928 under sheriff's deed executed in pursuance of foreclosure proceedings, which purported to convey to him the absolute and exclusive title thereto. From that date he has remained in the exclusive, open, visible, and continuous possession thereof under claim of absolute ownership. It will be seen that the entry upon the land by the defendants in each instance was hostile to the claim of plaintiff from the time of the original entry thereof; no outstanding interest in her was ever recognized or in any manner indicated. Even though the presumption is indulged that the several entries were in subordination to the title of the true owner, the nature of the exclusive conveyance under which the several entries were made is of some value as evidence in determining the question of ouster, and when considered with the other evidence, there is shown a denial or repudiation of plaintiff's claim by clear and positive proof, which appears here to be in no way controverted. Of course this is not to say that Bertha Pauline Nance did not own an interest, but it is to say that the defendants did not recognize such title in her, but held and possessed the land adversely to her, as clearly shown by all the evidence.

In Hurie v. Quigg, supra, the court held in the second paragraph of the syllabus as follows:

"A conveyance of land made in contravention of the provisions of section 1679, C. O. S. 1921, is void as against the persons holding adversely claiming to be the owners thereof under color of title."

There is some contention here that the quitclaim deed made by the plaintiff on November 6, 1933, was not made to the parties in possession. As we view the facts as shown by what we have already said, the record before us will support no other conclusion than that the parties to whom the deeds were made were in possession of the land at the time of the making thereof.

Some further contention is made to the effect that some of the defendants obtained title and possession through fraud, basing the contention largely upon the fact that the petition for partition omitted to name the plaintiff as an heir, and that a casual inquiry by either of the defendants who held title to part of the real estate would have disclosed this fraud. Even if we agreed with the contention that fraud is shown, it is not made to appear wherein it would be

material in a case of this nature involving the question of the violation of the champerty statute. Adverse possession of real estate is frequently accompanied by fraudulent and tortuous acts. The law of champerty in this state is statutory, and contains no exception making it inapplicable where the adverse holding is accomplished by fraud. We would not be justified in concluding that such an exception was intended by the Legislature.

The cases cited by plaintiff in this connection relate generally to a fraudulent acquisition of title, and would probably be in point if the question of champerty were not involved, and if the nature of the action were one where the cotenant was seeking to recover title such as in the case of Arthur v. Coyne, supra.

It therefore follows that the trial court should have adjudged the Wimbish deed to be champertous and void under section 1939, O. S. 1931, and that the judgment for the plaintiff was erroneous. See Davis v. Manhard, 172 Okla. 85, 45 P. (2d) 1095.

The judgment is therefore reversed; and it conclusively appearing from the facts that the defendants should prevail, the cause is remanded, with instructions to enter judgment in favor of the defendants.

McNEILL, C. J., and BAYLESS, CORN, and GIBSON, JJ., concur.

### On Rehearing.

GIBSON, J. In their argument on rehearing the defendants in error state as follows:

"The facts in this case as stated in the opinion are not in dispute. It is the legal effect of these facts when applied to the rights of a minor which is disputed. If Bertha Pauline Nance had been an adult a different situation would have arisen, and the authorities cited by this court in said opinion would have been applicable. It is in applying decisions where the rights of an adult cotenant are involved to this case where the rights of a minor cotenant are involved that this court fell into error, in our opinion."

It is seen that defendants in error, while recognizing in the opinion the proper application of the rule relative to adverse possession as between tenants in common, take exception to the application of that rule to an infant cotenant. It is urged in this connection that an infant cotenant cannot be charged in law with notice of adverse holding of real estate until he is capable in law of receiving such notice, and there can be no actual ouster, or adverse holding as to the infant before he reaches majority.

The agreed statement of facts in the instant case shows that the Woodroof heirs, and their assigns, were in complete, open, notorious, adverse, and continuous possession of the lands in question and claiming the same as against the whole world, and especially as against Bertha Pauline Nance. This state of facts brings the case squarely within the scope of the rule announced in Beaver v. Wilson, 117 Okla. 68, 245 P. 34, unless the minority of Bertha Pauline Nance furnishes an exception.

The rule is there stated as follows:

"The statute of limitations does not begin to run in favor of one cotenant of land in possession, against another cotenant thereof, until actual ouster by the former or some other act or acts on his part amounting to a total denial of the rights of the latter, and until notice or knowledge of the act or acts relied on as an ouster is brought home to him.

"The notice or knowledge required must be either actual, or act or acts relied on as an ouster must be of such an open and notorious character as to be notice of themselves, or reasonably sufficient to put the disseized cotenant on inquiry, which, if diligently pursued, will lead to notice or knowledge of the fact."

We are unable to agree with defendants in error's contention and must hold that the foregoing rule applies alike to minor and adult disseized cotenants. The suspension of the statute of limitations as against an infant, where recognized, seems not to rest upon a doctrine of common law, but upon express statutory provision, and the elements that constitute the acquisition of title by adverse possession against an infant are generally the same as those applicable in other cases. 31 C. J. 1011, sec. 49; Vance v. Vance, 108 U. S. 514, 27 L. Ed. 809. Our statute (section 11729, O. S. 1931) recognizing titles acquired by adverse possession saves no class of persons from the operation thereof; and our statute of limitations (section 99, O. S. 1931) fails to exclude infants from its operation. The ouster sets the statute of limitations running in favor of the disseizor, but section 100, O. S. 1931, requires that as against a minor the adverse holding must continue for two years after he reaches majority.

It has been definitely held in California that an infant can be ousted from his possession by either a stranger or a cotenant and that the effect which the notice of such ouster will produce is not the test of the sufficiency thereof, and that the same acts

and declarations which constitute an ouster apply to an infant as well as to an adult, whether the notice of ouster be actual or presumptive. Winterburn v. Chambers, 91 Cal. 170, 27 P. 658; Akley v. Bassett, 189 Cal. 625, 209 P. 576.

Unless an ouster is made inoperative. as against an infant by statutory provision, it is usually held that the infant may be ousted as effectively as an adult. Vance v. Vance, supra; Dewey v. Sewanee Fuel & Iron Co., 191 Fed. 450 (Tennessee Statute); Campbell v. Whisman, 183 Ky. 256, 209 S. W. 29; McGraw v. Rohrbough, 74 W. Va. 285, 82 S. E. 217. None would seriously contend that a cause of action does not immediately accrue to an infant upon being denied possession of his realty. When the cause accrues, the statute commences to run, and by legislative grace (section 100, O. S. 1931) it is allowed two years after majority to assert its rights by proper action.

Here no title is claimed by adverse possession as against the minor, but adverse possession is asserted and proved for the purpose of invoking the champerty statute as a defense against the deed executed by the ousted cotenant to parties not in possession. In the instant case the minor could have maintained her action for possession at any time within 15 years from the date the statute commenced to run or, if the 15 years had run prior to the date of her majority, she was vested by legislative grace with an additional two years after majority in which to assert her rights. No rights of the minor are defeated, but, as is the case with any other disseized cotenant, a conveyance of her interest to others than those in possession was void.

Our statutes on this subject will not permit a contrary holding.

The petition for rehearing is denied.

McNEILL, C. J., and BUSBY, WELCH, PHELPS, and CORN, JJ., concur. OSBORN, V. C. J., not participating. RILEY and BAYLESS, JJ., absent.