RED BED ROYALTY CO. et al. v.
PHELAN et al.

No. 29744. Feb. 2, 1943.

Rehearing Denied March 16, 1943.

*134 P. 2d 969.*

Twyford & Smith and William J. Crowe, all of Oklahoma City, for plaintiffs in error.

I. L. Harris, Ted R. Elliott, and Robert J. Keevan, all of Oklahoma City, for defendants in error.

CORN, C. J. This is an appeal from a judgment of the district court of Oklahoma county, in an action brought by Mamie Phelan, plaintiff, against certain named defendants, to quiet title to real estate described as lots 25 and 26 in block 14, Lawrence Place addition to Oklahoma City.

Prior to 1924 this property was owned jointly by J. L. and John Carter. June 16, 1924, the county treasurer executed a resale tax deed to one John T. Phelan. This deed is admittedly void.

April 24, 1929, Phelan conveyed his interest to his sister, Annie Mahoney, who, in 1930, conveyed to the plaintiff. In 1931 she sued to quiet title and, while suit was pending in 1935, she conveyed to Bayles, intervener herein.

In 1929, while Phelan was holding under the void tax deed, Annie Mahoney received a quitclaim deed from John and J. L. Carter, and this deed is now admitted to be void.

A deed from John Carter, dated June 1, 1930, but acknowledged June 1, 1931, conveyed this property to J. C. Davis, who later quitclaimed the property to the Red Bed Royalty Company. January 25, 1939, while this action was pending and after the deed from Carter to Davis, the plaintiff herein secured a quitclaim deed from John Carter.

The foregoing shows the titles of the parties to this action, an undivided one-half interest being the interest here involved. The parties agree that Bayles owns one-half of this property. Hence, the deed to Davis is good, unless it is held to be void because champertous by reason of the fact that Phelan was in possession of the property at the time said deed was given.

After hearing the evidence the trial court found that: (1) The chain of title from 1924 to time of acquisition by the intervener was as alleged, and in 1924 J. T. Phelan had taken possession of the premises through his agent, J. R. Phelan; that taxes had been paid by him, or grantees under him, the property having been leased and rents collected and improvements made thereon; (2) none of defendants had ever been in possession of premises since execution of the tax deed in 1924; (3) in 1935 Mamie Phelan had obtained a quitclaim deed from the heirs of J. L. Carter, deceased, which conveyed a valid title to the undivided one-half interest of J. L. Carter; (4) January 29, 1935, plaintiff obtained a quitclaim deed from John Carter which conveyed a valid, undivided one-half interest in this property, this grantor being the same John Carter who was an original owner, with his brother, in 1924; (5) that when said deeds were obtained plaintiff was in actual possession of this property, claiming title thereto and receiving the rents therefrom; (6) the conveyances from J. F. Carter to John Carter, dated June 1, 1931, and the conveyance from John Carter to J. C. Davis, dated June 2, 1931, and the conveyance from Davis to the Red Bed Royalty Company, were all champertous and void; (7) that the deed from John Carter to J. C. Davis, dated June 1, 1930, but acknowledged June 1, 1931, was really executed on the date of the acknowledgment, the error of the date being the error of the scrivener.

The sole question here to be decided is whether the deed from John Carter to J. C. Davis was champertous, by reason of the fact that plaintiff was in

possession of this property during 1930-1931. The argument made by defendants is to the effect that the judgment is clearly against the weight of the evidence, and that the evidence is wholly insufficient to establish that the plaintiff, or her predecessors in title, were in possession of these premises during those years.

The first question then relates to the deed from Carter to Davis, dated June 1, 1930, but acknowledged on June 1, 1931. The defendants contend that the presumption is that the deed was made and delivered on the date which it bore, and that this presumption is not overcome by the fact that the acknowledgment bore a later and conflicting date. However, in view of the record, we are of the opinion the application of this rule, based upon numerous cases cited by defendants, cannot properly be made here.

John Carter, who executed this deed, testified by deposition taken in March, 1932. His testimony was that he never signed but one deed, the deed to Davis, covering this particular property, and he fixed the time when he signed such deed as "last summer," which definitely established the date of execution of this deed as being in 1931.

It was upon such evidence that the trial court determined that the deed from Carter to Davis was actually executed June 1, 1931. In view of this evidence and other circumstances, we are of the opinion the deed was executed and delivered on June 1, 1931, and the trial court was correct in his finding in this respect.

There remains the question involving the sufficiency of the evidence to establish whether the property was actually in the possession of the plaintiff, or those holding under Phelan, during June, 1930.

Regarding the matter of possession, J. R. Phelan (who handled the property for J. T. Phelan) and those holding under him testified that he rented these lots to various people over the years between 1925 and 1937; in 1931 he rented these lots to one Wood under a written lease, which was introduced at the trial and which bore the date of May 16, 1931, executed by Mamie Phelan to A. J. Wood; he paid taxes on the property over the years and caused small improvements to be made thereon.

Wood testified he leased the property and tended it for two years, but was uncertain whether he tended the property in 1931; he didn't think he tended these lots in 1931, although it was the lease which he signed that was in evidence; and that about all he remembered was that he had sweet potatoes one year and Irish potatoes one year.

It is from this evidence that defendants insist it is established that plaintiff's possession for 1930-1931 was insufficient. Wood rented various lots. He "didn't think" he tended this particular land in 1931, but he admitted the lease thereon was the one which he signed. To this is to be added the positive testimony of Phelan, who testified as to the handling and disposition of the property from 1925 on, with the exception of 1930, when he testified that he leased it but the party moved away.

We are of the opinion these facts are sufficient to establish plaintiff's possession of the premises during the time in question, and therefore the judgment is not clearly against the weight of the evidence.

Plaintiff asserts that the rules announced in the cases of Davis et al. v. Manhard, 172 Okla. 85, 45 P. 2d 1095, and Setterstrom v. Phelan, 182 Okla. 453, 78 P. 2d 415, are controlling herein. We are of the opinion the rules laid down in Davis v. Manhard, supra, are decisive of the issues herein involved.

Davis was never in possession of this property. Carter's possession was prior to 1924. From and after 1924 Phelan had possession of the property, handled it, collected rents, and caused improvements to be placed thereon. Under the rule in the Manhard Case, supra, we are of the opinion the necessary possession was established, and the deed in ques-

tion from Carter to Davis was void as being champertous.

Judgment affirmed.

RILEY, BAYLESS, WELCH, and HURST, JJ., concur. GIBSON, V.C.J., and OSBORN, DAVISON, and ARNOLD, JJ., dissent.