## ARTHUR v. COYNE.

No. 1654.   Opinion Filed March 19, 1912.

(122 Pac. 688.)

1. **TENANCY IN COMMON**—Constructive Trusts—Persons in Confidential Relations.   Two persons each owned an undivided one-half interest in the improvements on, and the right of possession to, a town lot, and were, as such cotenants, entitled to have it scheduled to them jointly, and to purchase it under the town-site law.   One of the cotenants, without the knowledge or consent of the other, had the lot scheduled to and acquired the legal title in himself individually.   **Held,** that he took the legal title of the interest of his cotenant as trustee, and that equity will decree a conveyance of such legal title.

2. **SAME**—Mutual Relations of Cotenants—Acquisition of Adverse Interest.   Cotenant owners of an estate in lands stand in a relation to each other of mutual trust and confidence, and neither will be permitted to act in hostility to the other in reference to the joint estate; and a distinct title acquired by one will ordinarily inure to the benefit of all.

3. **APPEAL AND ERROR**—Review—Abandonment of Error.   Under the rules and well-settled practice of this court, all assignments of error, not argued in plaintiff in error's brief, will be treated as abandoned.

(Syllabus by Brewer, C.)

*Error from District Court, Tulsa County;*
*John H. Pitchford, Judge.*

Suit by Partrick E. Coyne against Andrew Arthur.   Judgment for plaintiff, and defendant brings error.   Affirmed.

*Hainer & Martin,* for plaintiff in error.
*Owen & Stone* and *Lydecker & Steele,* for defendant in

error.

Opinion by BREWER, C.   This is a suit to declare a resulting trust, and for damages.   It was filed in the United States Court for the Western District of Indian Territory on March 24, 1905.   On May 26, 1909, a jury being waived, it was tried by the district court of Tulsa county, and the judgment was ren-

Arthur v. Coyne.

dered in favor of plaintiff, in which it was adjudged that plaintiff was the equitable owner of a one-half interest in lot 4 of block 70 of the city of Tulsa, and that defendant was holding the legal title to such interest as trustee for plaintiff. The court also awarded plaintiff one-half of the rents on the lot, amounting to $562.50. From this judgment, the defendant below, as plaintiff in error, prosecutes this appeal. We will refer to the parties hereafter as they were known in the trial court.

The contentions of the defendant are: First, that the second amended petition does not state a cause of action; second, that the court erred in overruling defendant's demurrer to plaintiff's evidence. Other assignments of error have not been argued in the brief, and are therefore waived.

We summarize the facts as alleged and proven in this case as follows: On and prior to July 10, 1902, the defendant and one Walsh were joint owners of the improvements on and the right of possession of lot 4, block 70, in the city of Tulsa, and as such joint owners were entitled to have said lot jointly scheduled to them by the town-site commission, and to purchase same under the town-site laws; that on or about July 10, 1902, the defendant, without the knowledge or consent of Walsh, had the lot scheduled to himself individually by the town-site commission; that on July 16, 1902, the defendant and Walsh, present together in person, conveyed, by bill of sale, their respective interests in the improvements and lot to plaintiff for the sum of $400, which was paid them and divided equally between them; that in a day or two after such sale to plaintiff the defendant procured a recession of the sale to plaintiff, in so far only as his (defendant's) one-half interest was concerned, and returned to plaintiff the $200 he had received; that shortly thereafter defendant wrote to the proper United States authorities, asking that the scheduling of the lot in controversy be corrected by naming the plaintiff and defendant as joint schedulees and owners. This request the authorities declined to grant, on the ground that it involved considerable trouble, and suggested that defendant secure the same result by conveying the one-half inter-

est to plaintiff. This he agreed with plaintiff to do. Plaintiff, with the knowledge of and by agreement with defendant, paid one-half of the appraised value of the lot, one-half of the city taxes assessed against it, one-half of the valuable improvements thereafter placed on it, and received from tenants in possession of it one-half of the rents and profits, Later defendant moved onto the lot by agreement with plaintiff, paying plaintiff one-half of the agreed rental value, without denying plaintiff's right or interest until about the 1st of March, 1905, at which time defendant refused to convey the legal title to the one-half interest, denying plaintiff's right to the same, and refused to pay further rents, etc., all of which resulted in this suit. The patent from the Creek Nation was dated April 20, 1905, and delivered to defendant. The above facts appear from plaintiff's evidence; defendant offered none. The evidence followed substantially the allegations of the petition, which was filed in the United States Court on the equity side of the docket.

The plaintiff in error confines his brief to a discussion, intended to show that, under the pleading and proof in this case, the court erred in holding that he was holding the one-half interest of plaintiff as trustee, etc. In our judgment, the position is not tenable. On July 10, 1902, when defendant scheduled the lot in his own name, Walsh was owner of a one-half interest in the lot and improvements, and they were in joint possession as tenants in common. In scheduling the lot in his own name, without the knowledge of his cotenant, he committed a fraud, if his intention was to secure the full title in himself alone. There was a relation between these cotenants of mutual trust and confidence; neither had the right to act in hostility to the other with reference to the estate, or to acquire the complete legal title in himself alone, when, under the law, they were entitled to it as such co-owners. And when the defendant acquired the legal title in the manner it was acquired it inured to the benefit of his cotenant.

The case of *Turner v. Sawyer,* cited by appellee, and reported in 150 U. S. 578, 14 Sup. Ct. 192, 37 L. Ed. 1189, is directly in point on the principle stated. In that case, it is said:

"It is well settled that cotenants stand in a certain relation to each other of mutual trust and confidence; that neither will be permitted to act in hostility to the other in reference to the joint estate; and that a distinct title acquired by one will inure to the benefit of all. A relaxation of this rule has been sometimes admitted in certain cases of tenants in common who claim under different conveyances and through different grantors. However that may be, such cases have no application to the one under consideration, wherein a tenant in common proceeds surreptitiously, in disregard of the rights of his cotenants, to acquire a title to which he must have known, if he had made a careful examination of the facts, he had no shadow of right. We think the general rule, as stated in *Bissell v. Foss,* 114 U. S. 252, 259 [5 Sup. Ct. 851, 29 L. Ed. 126], should apply; that 'such a purchase' (of an outstanding title or incumbrance upon the joint estate for the benefit of one tenant in common) inures to the benefit of all, because there is an obligation between them, arising from their joint claim and community of interest, that one of them shall not affect the claim to the prejudice of the others. *Rothwell v. Dewees,* 2 Black, 613 [17 L. Ed. 309]; *Van Horne v. Fonda,* 5 John. Ch. [N. Y.] 388; *Lloyd v. Lynch,* 28 Pa. 419 [70 Am. Dec. 137]; *Downer v. Smith,* 38 Vt. 464. A title thus acquired, the patentee holds in trust for the true owner, and this court has repeatedly held that a bill in equity will lie to enforce such trust. *Johnson v. Towsley,* 13 Wall. 72 [20 L. Ed. 485]; *Moore v. Robbins,* 96 U. S. 530 [24 L. Ed. 848]; *Marquez v. Frisbie,* 101 U. S. 473 [25 L. Ed. 800]; *Rector v. Gibbon,* 111 U. S. 276, 291 [4 Sup. Ct. 605, 28 L. Ed. 427]; *Monroe Cattle Co. v. Becker,* 147 U. S. 47 [13 Sup. Ct. 217, 37 L. Ed. 72.]"

The following authorities are in point: *Lloyd v. Lynch,* 28 Pa. 419, 70 Am. Dec. 137; *Brundy v. Hayfield,* 15 Mont. 201, 38 Pac. 1067; *Weaver v. Wible,* 25 Pa. 270, 64 Am. Dec. 696; *Tisdale v. Tisdale,* 2 Sneed (Tenn.) 596, 64 Am. Dec. 775; *Mandeville v. Solomon,* 39 Cal. 125; *Noel v. White,* 37 Pa. 514; *Bender v. Stewart,* 75 Ind. 91.

Under the doctrine of relation, when the patent issued to defendant, it related back and took effect as of the date of the application for and scheduling of the lot, to wit, July 10, 1902.

*Shepley v. Cowan,* 91 U. S. 330, 23 L. Ed. 424; *Beard v. Federy,* 3 Wall. 478, 18 L. Ed. 88; *Nicholson v. Congdon,* 95 Minn. 188, 103 N. W. 1034; *Welch v. Dutton,* 79 Ill. 465.

The written bill of sale from the cotenant, Walsh, to plaintiff, Coyne, executed July 16, 1902, was sufficient under the law of Arkansas, in force in Indian Territory at that date, to pass all the estate of Walsh to plaintiff. (We treat this instrument, as executed, only as between Walsh and Coyne.) It follows, then, that defendant held the one-half interest in trust for Walsh; and, plaintiff having bought that one-half interest from Walsh in the presence of defendant, defendant held the legal title to the interest in trust for Coyne, as was declared by the trial court.

In fact, there is a question of estoppel in this case, were it necessary to rest the decision on it. When defendant stood by and saw and encouraged the sale by his cotenant, Walsh, to plaintiff of the one-half interest, then recognized such interest in plaintiff, in writing, by attempting to correct the schedule so that plaintiff would appear as a joint owner in the patent, later holding the same in joint possession, permitting plaintiff to pay the government, through him, one-half of the appraised value, permitting plaintiff to pay one-half of the cost of betterments, and paying plaintiff one-half the rental value for his own occupancy—these were all acts inconsistent with the position taken by defendant in this case, and under which equity and good conscience required him to convey the technical legal title to plaintiff of the interest in the lot, of which all the proof shows him to be the equitable owner.

The defendant contends that, because the plaintiff did not contest before the department the scheduling of the lot, equity is powerless to relieve him, and cites *Garrett v. Walcott,* 25 Okla. 574, 106 Pac. 848, and other cases to sustain the point. Under the facts of this case, and the relations of the parties, it is obvious that the rule contended for does not apply.

As has been said, the other questions raised in this case, not having been urged in the brief, have been waived under the rules and well-settled practice in this court. *Citizens' Bank &*

*Trust Co. v. Dill,* 30 Okla. 1, 118 Pac. 374; *Noble State Bank v. Haskell,* 22 Okla. 48, 97 Pac. 590; *Eiklor v. Badger,* 25 Okla. 853, 108 Pac. 359; *Allison v. Bryan,* 26 Okla. 520, 109 Pac. 934, 30 L. R. A. (N. S.) 146, 138 Am. St. Rep. 988; *Choctaw, O. & G. R. Co. v. Sittel,* 21 Okla. 695, 97 Pac. 363.

The result reached in this case was correct, and it should be affirmed.

By the Court: It is so ordered.