**Yukola PALMER, Plaintiff in Error,**

v.

**Gibson L. PALMER, Administrator of the Estate of Gibson Palmer, Deceased, Defendant in Error.**

**No. 42809.**

Supreme Court of Oklahoma.

Nov. 12, 1969.

Rehearing Denied March 3, 1970.

Deaton & Gassaway, Ada, for plaintiff in error.

Bob E. Bennett, Ada, for defendant in error.

BLACKBIRD, Justice.

This appeal arose out of a divorce action instituted by plaintiff in error, hereinafter referred to as "plaintiff", against Gibson Palmer (who died after the briefs were filed herein, resulting in revivor in the name of the defendant in error), hereinafter referred to by his trial court designation of "defendant". The decree plaintiff herein challenges dissolved her marriage to defendant, awarded her custody of the parties' approximately 15-year-old daughter, Katie (the only child born of their marriage), and child support of $100.00 per month, and purported to effect a division of the parties' property, both personal and real. Plaintiff attacks only that part of the decree which awards defendant an interest in certain items or parcels of the property that were acquired during the couple's marriage.

When the parties married in 1949 and established a home at Madill, plaintiff owned a home on East 8th Street in Ada and a Creek County farm her father had given her. After they sold the Dairy Bar business he had established before their marriage, as well as other Madill property they acquired thereafter, and moved from there to Ada in 1954, they acquired a large residence on East 7th Street there, known as the "Bell property", by trading in on it her Ada residence for an allowance of $6,500.00 and paying an additional amount in cash. After the Bell property had been converted into four apartments, largely through the labor and expenditures of defendant, and the couple had lived in one of the apartments and collected rentals on the other three for more than a year, they sold the property to Ada Missionary Baptist Church for $12,500.00 and used the Church's down payment of $4,000.00 to apply on the $9,500.00 price of an acreage referred to as the "Pete Morris property", title to which they acquired as joint tenants, with respective rights of survivorship. The only dwelling then situated on the Pete Morris property was referred to as the "Log Cabin". Defendant made improvements on it and it has been renting for $50.00 per month.

During the same year, and in 1957, the couple developed other building sites on the Pete Morris tract. One of these on which defendant, assisted by his father, who was also a carpenter, constructed a house referred to as the "Crown Point Drive" property, was sold at a $3,000.00 profit. Thereafter, the couple constructed two other houses on the Pete Morris tract. Their street addresses became 1005 and 1011 E. Central Boulevard, respectively, and, for several years, they were rented.

In 1958, plaintiff's mother died, and thereafter, in 1959, when her mother's and father's estates were probated, she was distributed therefrom approximately $20,-000.00 in cash, and an undivided ⅕th interest in a 385-acre pecan farm her father had placed in a 20-year trust for his heirs. This property was referred to as the "Pecan Grove Trust".

With her cash inheritance, plaintiff invested in U.S. Bonds worth $10,000.00. She also contributed $3,922.00 to the purchase of a promissory note referred to as the "Brown note", together with the real estate mortgage securing it. Defendant contributed $800.00 to this purchase. The rest of plaintiff's cash inheritance was thereafter expended for a Hammond Organ, for furnishings that went into the couple's home, and for items that she was reluctant to ask defendant to buy.

In February, 1963, the parties' aforementioned property at 1005 East Central Boulevard was sold to a Mr. and Mrs. Brunkow, and $10,300.00 of the property's price was paid with a note secured by a mortgage on the property, which note and

mortgage plaintiff purchased from defendant by cashing her aforementioned U.S. Bonds. This real estate was apparently later resold to a Mr. Paul Alford for $11,500.00, and the aforementioned note and mortgage, owned by plaintiff, is now the obligation of a Mr. and Mrs. Joy M. Houston. The monthly installments on this note are $65.00 each. Fifteen hundred dollars of the ten thousand dollars plaintiff paid defendant for the aforementioned Brunkow, now Houston, note and mortgage was used to pay the difference between the trade-in allowance of the parties' old family automobile and the price of an air conditioned, used Rambler Sedan that was purchased in 1963, when plaintiff accepted a position obtained through the University of Oklahoma Medical Center. Later, this Rambler was apparently traded in on a 1966 Model Chevrolet for her, but, before its warranty period had expired, it was traded in on her present 1967 Model Chevrolet, which the parties borrowed $1,731.60 to buy. Title to this car was taken in plaintiff's name, and she has fully paid the indebtedness on it out of her earnings in the above mentioned position, which she held until about six weeks after filing this action for divorce in July, 1967.

Before the parties moved out of the apartment house they sold Ada Missionary Baptist Church in 1956, as aforesaid, they set aside a space on the Pete Morris tract for a homestead, large enough for eight lots, and then, on that site, constructed a home, whose street address became: "1038 South Francis". Defendant not only drew the plans for this home, but expended $14,000.00, not counting the value of his own services, in constructing it. When it was finished, the couple and their daughter moved into it from their apartment in the aforementioned former Bell property.

Finally, in the Fall of 1964, the aforementioned property at 1011 East Central Boulevard was sold to a Mr. and Mrs. Don LaSalle, for $20,000.00. The LaSalles made a down payment of only $500.00 and executed and delivered to plaintiff and defendant their note in the principal sum of $19,500.00, secured by a real estate mortgage on the premises. The monthly payments on this obligation are $115.00 each, and defendant has been receiving them.

At the trial it appeared that other property (besides that already mentioned) which either, or both, of the parties acquired during their marriage, consisted of an unimproved cabin site in Freeport, Texas, purchased by plaintiff for approximately $1,300.00 in 1966, some stock in Atkinson Enterprises, for which she paid $120.00, some U.S. Savings Bonds purchased out of her salary, some cemetery lots plaintiff purchased for $545.00 to provide a burial place for her and Katie, and which she is paying for by installments, and a Chevrolet Pick-up Truck purchased for defendant.

It also appeared at the trial that, about two years previously, plaintiff had ceased depositing funds in the parties' joint bank account, and had opened a separate checking account in Ada's First National Bank & Trust Company. She testified that she had $700.00 or $800.00 in that account. She also testified that she had "a little over three thousand dollars" in a separate savings account in said Bank. She further testified, in substance, that she had deposited, in this savings account, checks she had received from producing royalty from her separate mineral interests, as well as funds representing payments on the Brunkow-Houston note, that she had transferred from her savings account at Ada's Home Savings & Loan Association.

It further appeared, among other things, that, at the time of the trial, defendant was employed in two occupations, namely, as the operator of a rug cleaning machine for the Rogers' Carpet & Upholstering Cleaners, since April 1, 1967, and as both such an operator, and as a night custodial foreman and watchman for the E. H. Rogers Company at the Robert S. Kerr Research Center since July 1st of that year.

Defendant testified that he had always deposited the payments he had received on the LaSalle note in the parties' joint bank account, but that after plaintiff

"pulled off and quit" this account two years before, and he got his next statement from the bank on said account, he "was hit for seven hundred dollars". He further testified that (at the time of the trial) there was only "nine dollars and forty some odd cents—" in that account, and that he had no other bank account, or bonds, or securities, or other assets of that character.

In the divorce decree herein complained of, the trial court specifically set apart to plaintiff, as her separate property, her aforementioned 1967 Chevrolet automobile, and all of the furnishings in the parties' home at 1038 South Francis, together with all of the mineral interests, and the interest in the Pecan Grove Trust, she inherited from her parents' aforementioned estates, as well as the Houston note and mortgage. The only item of the parties' real and personal property that was set apart to defendant, as his separate property, was the hereinbefore mentioned pick-up truck.

The rest of the parties' property was "declared to be owned equally by the parties * * * as co-tenants"; and the decree further provided: "In the event either or both of the parties hereto desires they may apply to this Court within six months for a partition of such property". After "this part" of the decree, the following items of the parties' property were designated as "subject" to it: (1) The hereinbefore mentioned savings account in the. name of plaintiff at Home Savings & Loan Association, (2) the parties' hereinbefore mentioned checking accounts in the First National Bank & Trust Company, (3) the U.S. Savings Bonds in plaintiff's name, (4) the Freeport, Texas, lot, (5) the hereinbefore mentioned LaSalle note and mortgage, (6) the hereinbefore mentioned cemetery lots, and (7) that part of the Pete Morris property still owned by the parties, and consisting of their hereinbefore mentioned homestead at 1038 South Francis and the "Log Cabin" (Street No. "1017") property. As to these latter residential properties, the decree declared that the parties' joint tenancy was "hereby severed * * * the parties to hereinafter own" them "as tenants in common".

In argument under her first and third propositions, plaintiff contends that the court erred in vesting the items of property referred to above as "(1)" to "(4)", both inclusive, and item "(6)", in both parties as co-tenants, and in not setting apart to plaintiff, as her separate property, the aforementioned savings account in the First National Bank and the entire balance due on the Brown note, because the evidence shows that these items were either her separate funds, or constituted property derived therefrom. She points to testimony showing that she furnished $3,922.00, and that defendant contributed only $800.00, to the purchase of the Brown note.

As hereinbefore indicated, the undisputed testimony shows that, about two years before the trial, plaintiff quit depositing her income and earnings in the parties' joint accounts, and started separate ones; and there can be little doubt that the balance in those accounts at the time of the trial ($3,000.00 in her savings account, and $700.00 in her checking account, in the First National Bank, and $400.00 in her account at Home Federal Savings & Loan Association) were all accumulated there from her salary as an employee of the O.U. Medical Center and from other individual income. Nor can there be any doubt but that the nine U.S. Savings Bonds that she purchased for $18.75 each out of her salary, the cemetery lots she was buying for a price of $545.00, and the stock in Atkinson Enterprises she had purchased for $120.00, were independent of any direct contribution by defendant. Nor does defendant claim that he contributed anything to plaintiff's purchase of the Freeport, Texas, (cabin site) lot for $1,300.00. All of these items should have a reconsideration by the trial court.

Plaintiff maintains that, in its decree, the court should have set aside to her the four-thousand-dollar down payment that the evidence shows the Ada Missionary Baptist

Church made on its purchase of the East 7th Street, former Bell, property (which defendant remodeled into apartments, as aforesaid) because it is an undisputed fact that the East 8th Street home she owned before the parties married was traded in (at a value of $6,500.00) on this property. She also says that since she contributed $3,922.00 to the purchase of the Brown note, as compared to the $800.00 defendant contributed to its purchase, the court should have awarded to her such pro rata part of the balance due on said note, which she says is $4,638.84 (defendant having received 86 installments of $53.94 each, or $4,638.84, already paid on it).

In, and under, her second proposition, plaintiff advances the further argument that the trial court's vesting of the title to the parties' presently-owned real estate in them, as co-tenants, is contrary to the property division authorized, or contemplated, in the following provision of Tit. 12 O.S.1961, § 1278:

"* * *

As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties respectively as may appear just and reasonable, by a division of the property *in kind*, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof." (Emphasis added.)

In support of her argument, plaintiff quotes this Court's opinions in Blount v. Blount, Okl., 425 P.2d 474, and Lawson v. Lawson, Okl., 295 P.2d 769, which defendant says are not applicable.

 We must agree that the purported "division" of property ordered in the decree appealed from is not the sort of division contemplated in Section 1278, supra. In attempting to make the parties tenants in common in the Ada real estate they still owned at the time of the trial, the trial court freed none of it from the possessory rights, or claims, of either party. As showing that the creation of such a co-tenancy is not the division referred to in said Section, we quote the following from Lawson v. Lawson, supra:

"To comply with the statute, the entire title with right of possession to part of the property should have been given to one and the entire title with right of possession to the remainder should have been given to the other. Neither should have been required to account to the other for what he or she did with the property or the income derived therefrom. If one party thereby was awarded property in excess of what the trial court thought he or she was equitably entitled to, a lien could be established thereon securing the payment of such sum as the court thought necessary to adjust the equities. In other words, the property awarded to each should be free from the claims or domination of the other."

While it may be that the trial court's decree (purporting to change the parties' interests from joint tenancies to tenancies in common) might be deemed sufficient as a "severance of the common title" plaintiff and defendant acquired in this real estate, by their joint tenancy deed—in a tenancy in common, one tenant may own only a life estate, while the other owns his part in fee simple. See American Bank & Trust Co. v. Continental Inv. Corp., 202 Okl. 341, 342, 213 P.2d 861, 863, quoting Tilton v. Vail, N.Y., 42 Hun., 638. That kind of a tenancy, with its unity of possession, and co-equal possessory rights in each tenant, was specifically rejected as not conforming to our Statute in Kupka v. Kupka, 190 Okl. 392, 124 P.2d 389. Notice also 27B C.J.S. "Divorce" § 292(1), p. 269, footnote 23.5.

 While the trial court's recognition of the parties' rights to a true division of the property in kind (by mentioning in its decree they might apply for partition

in six months) was commendable, it did not afford plaintiff the remedy she insists upon, and is entitled to, under Sec. 1278, supra. As said court erred in not correctly applying that statute to the facts of this case, its decree cannot stand. See Bouma v. Bouma, Okl., 439 P.2d 198, 201. As a rule, when this occurs, this Court will "effect a complete adjudication of the cause" (Moyers v. Moyers, Okl., 372 P.2d 844, 846), but here the evidence in the record is insufficient to enable us to do that. This, of necessity, will be the task of the trial court upon a partial new trial of this case.

■ However, upon such new trial, all items of property which they owned at the time of their marriage, or credit therefor equivalent in value, should, to the extent possible, be given to each of the parties respectively in a new and different division of their jointly acquired property. As to plaintiff, this would include any excess in the value of the fee in her Creek County farm, over the value of said farm's minerals remaining in her, if, by any acceptable and approximately accurate method, such excess can be determined or measured. Such division should also include the value of her pre-marital Ada residence, for which the parties were later given a trade-in allowance of $6,500.00 on the Bell property.

■ It is also our opinion that the share of the parties' jointly acquired property awarded to plaintiff in a new division of such property should include the sum of $3,922.00, with interest at the same rate that such sum would have drawn if it had been on deposit in a savings account at Ada's Home Savings & Loan Association. This sum that plaintiff invested in the Brown note, having come to her by inheritance and "[being] acquired by her in her own right" (Coleman v. Coleman, 180 Okl. 574, 72 P.2d 369, 1st syll.), was not "jointly acquired" property within the meaning of Sec. 1278, supra, and was not subject to division under said Statute. In this connection, notice Honeywell v. Honeywell, Okl., 344 P.2d 589, 591, and Williams v. Williams, Okl., 428 P.2d 218, 219, 222. Measuring the appreciation of her said investment in the Brown note, as herein decreed, will render it immune to defendant's argument that said sum was "enhanced" by his efforts in inducing her investment in said note.

In view of the foregoing, the order and/or judgment of the trial court overruling plaintiff's motion for a new trial is hereby affirmed to the extent that it leaves the parties' divorce decree undisturbed as to the property therein decreed to be plaintiff's separate property. It is hereby reversed as it concerns the Brown note and other items, of which plaintiff is to receive the benefit, as above indicated, in a new division of the parties' jointly acquired property; and this cause is remanded to the trial court for a partial new trial in accordance with the views herein expressed.

IRWIN, C. J., BERRY, V. C. J., and WILLIAMS, JACKSON, HODGES and LAVENDER, JJ., concur.

McINERNEY, J., concurs in part and dissents in part.