1998 OK 66

**Johnnalyn MATTHEWS, Plaintiff–Appellee,**

v.

**George L. MATTHEWS, Defendant–Appellant.**

**No. 87300.**

Supreme Court of Oklahoma.

June 30, 1998.

---

Reid K. Mayfield, Atoka, for Defendant–Appellant.

Shannon Reasor, Stamper, Hadley & Reasor, Atoka, for Plaintiff –Appellee.

OPALA, Justice.

¶ 1 The dispositive issue on certiorari is whether the divorced wife, a cotenant (with the ex-husband) of the property in contest, has established an enforceable post-decree

plea for the premises' sale on execution by showing an interest that is superior to the former husband's defense of homestead-status protection. We answer in the negative.

## I

### THE ANATOMY OF LITIGATION

¶ 2 George and Johnnalyn Matthews [husband, former husband, divorced husband and wife, former wife and divorced wife] were divorced by *consent decree* entered on 24 May 1984. Their marital property came to be divided, custody of two minor children was awarded to the wife, and the husband's child support obligation was set.

¶ 3 According to the decree's terms, the wife took possession of the marital home where she remained for over a year.[1] She remarried and moved to California with her children and the new spouse. The divorced husband then moved back into the former spousal home. He neglected to make child support payments for several years. The wife, who had commuted the arrearage to judgment,[2] pressed for a sale of the premises on execution. The husband defended by interposing his homestead-status protection.[3] After overruling the husband's motion to

1. For the ownership regime of the homestead in question under the terms of the divorce decree, see Part II(A) *infra*.

2. On 15 February 1990 the wife secured (in an administrative proceeding) a judgment for unpaid child support of $17,700; she then received on 9 December 1994 another judgment from the district court, which is for $2,532.73.

3. The husband relied on the terms of 31 O.S. 1991 §§ 1 et seq.

4. The pertinent terms of the 24 May 1984 divorce decree are:
   " * * * [T]he plaintiff is to received [sic] as her separate property the following:
   *    *    *    *    *    *
   The home of the parties, the home being more particularly described as follows:
   *    *    *    *    *    *
   Plaintiff to have the <u>possession</u> of the home of the parties until such time as plaintiff remarries or abandons the home, and at such time when either event occurs then defendant has the right to possession of the home until such time as he desires to sell it, and in that event it is mutually agreed by the parties that

quash and his objection to sale, the trial court confirmed the sale that was pressed by the wife. He timely appealed from the two adverse decisions. The Court of Civil Appeals affirmed.

## II

### THE OWNERSHIP REGIME OF THE PROPERTY IN SUIT

#### A.

¶ 4 *The Parties' Property Ownership Regime Under The Terms Of Their Divorce Decree*

¶ 5 According to the 24 May 1984 divorce decree, which incorporates the party's predivorce settlement agreement, the wife is to receive as her "separate property ... the home of the parties."[4] The decree provides that the wife is "to have possession of the home" until she remarries or abandons it, at which time the husband "has the right to possession of the home" with the power to sell it. In the latter event, the equity is to be divided equally between the parties. The wife lived in the home until 1985 when she remarried and departed from the state. The

the equity is to be divided equally between the plaintiff and defendant.
   Plaintiff is to assume the debt on the home during the time of her occupancy, defendant is to assume the debt thereon when he takes possession.

   *    *    *    *    *    *

   IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT that ... the plaintiff is awarded as her sole and separate property free and clear of any claims, rights, or interest whatsoever of the defendant, (except for the home), the following:

   *    *    *    *    *    *

   The home of the parties ...
   <u>Plaintiff to have the possession of the home of the parties until such time as plaintiff remarries or abandons the home, and at such time when either event occurs then the defendant has the right to possession of the home until such time as he desires to sell it, and in that event it is mutually agreed by the parties that the equity is to be divided equally between the plaintiff and defendant.</u>
   <u>Plaintiff is to assume the debt on the home during the time of her occupancy, defendant is to assume the debt thereon when he takes possession.</u> * * * " (Emphasis in original)

husband then moved into the spousal house and began making mortgage payments. *The parties agree that since 1985 the husband has been occupying this property as his homestead.*

¶ 6 Although the decree sets aside the property to the wife, it gives the husband occupancy rights (on wife's remarriage or abandonment of possession), an equal share in the equity on sale of the premises, as well as the exclusive power to sell the property. Where a divorce is granted and the property must be divided, the law enjoins that there be a complete severance of the common title.[5] The *portion* to be awarded each spouse *should be free from the claims* and *domination of the other.* These legal strictures do not apply if the parties agree to a different spousal property's division and *waive the law's requirement for severance of title.*[6] Whenever by spousal agreement the court awards marital property to both parties without severing their title, the decree is deemed to create in them an estate in cotenancy.

### B.

¶ 7 *The Property Ownership Regime Created By The Terms Of The Post–Divorce Quiet–Title Decree*

¶ 8 When the husband's child support obligation fell into arrears, the wife had the unpaid amount commuted to judgment.[7] She then brought suit to quiet her title against the husband's decree-conferred interest in the property. *The trial court refused to grant the relief sought.* It found from the terms of the earlier decree that the parties had agreed (a) they would each retain *an undivided one-half interest in the spousal property,* (b) the wife's right to possession and her duty to pay the mortgage would end if she either abandoned possession or remarried, (c) the husband's right to possession and his duty to pay would commence only if either of these events was to occur and (d) once the husband moved in, he would have a right to possession and the exclusive power *to sell the property.* The trial court also ruled that (a) because the parties' predivorce agreement was final, it could not be collaterally attacked in the quiet-title suit and (b) the husband's claim to homestead status that carries with it an exemption from sale on execution was uncontroverted.

¶ 9 It is clear that in this proceeding the parties' muniment of title in the contested property is no longer that which was conferred on them in the divorce suit, but rather that which stands redefined by the later quiet-title decree. The latter *disposition— as well as the former—settles the parties' title to the property in contest here as tenants in common.*

### III

¶ 10 **THE INCIDENCE OF THE TENANCY IN COMMON AND ITS IMPACT ON THE HOMESTEAD–STATUS PROTECTION FROM SALE ON EXECUTION**

#### A.

*Acts In Derogation of Another Cotenant's Title Or Rights*

¶ 11 Tenancy in common is a joint interest in property, the only essential element of which is a unity of right of possession.[8] Each tenant in common has a separate and distinct title which is held independently of the other cotenants. One who stands in a cotenancy relation to another may not act or claim "in derogation of"[9] the

**5.** 43 O.S.Supp.1992 § 121; *Kupka v. Kupka,* 190 Okl. 392, 124 P.2d 389, 391 (1942); *Brannon v. Brannon,* 207 Okl. 529, 250 P.2d 447, 450 (1952); ·*Lawson v. Lawson,* 1956 OK 113, 295 P.2d 769, 771; *Blount v. Blount,* 1967 OK 74, 425 P.2d 474, 477; *Williams v. Williams,* 1967 OK 97, 428 P.2d 218, 222.

**6.** *Mills v. Mills,* 1973 OK 74, 512 P.2d 143, 149; *Palmer v. Palmer,* 1969 OK 182, 465 P.2d 156, 160–61; *Coker v. Coker,* 1969 OK 167, 460 P.2d 424, 428; *Williams, supra* note 5 at 222; *Blount,* *supra* note 5 at 477; *Lawson, supra* note 5 at 771; *Brannon, supra* note 5 at 450; *Kupka, supra* note 5 at 391.

**7.** *See supra* note 2.

**8.** *American Bank & Trust Co. v. Continental Inv. Corp.,* 202 Okl. 341, 213 P.2d 861, 863 (1950).

**9.** The term "derogation" is "[o]rdinarily used to indicate an avoidance of; the abrogation of; *or the lessening in value of, a right or other legal*

latter's interest.[10] This means that a cotenant is not allowed to *lessen* or *diminish* the *value* or *effect* of the other cotenant's right, title, interest or status in the land.[11]

¶ 12 A homestead status in one's land is an interest attached by law for the purpose of protecting the entire family of its holder.[12] The protection afforded by one's homestead status is included in the bundle of sticks shielded by the rule against acts or claims that are in derogation of the cotenant's interest.[13]

## B.

### *The Interplay of Burdens*

¶ 13 When the wife sought to subject the husband's interest to a sale on execution, she had the initial burden—which she was able to sustain—to show that she had judgments for commuted child support delinquency. The husband then interposed and sustained the burden of his defense by establishing a homestead status in the contested land. Central to his plea is *not just* the divorce decree, *but more importantly* the post-decree property ownership regime es-

tablished in the later quiet-title suit. The burden then shifted back to the wife to buttress her demand with an interest (or compelling equity) that would overcome the husband's homestead-status protection. *As in a quiet-title suit, so also here the wife must prevail on the strength of her own claim rather than on the weakness of that interposed by her divorced husband.*[14] This the wife attempted to accomplish by tendering the debt's character as unpaid child support. Assuming that in this scenario a stranger to the title could indeed have defeated the husband's homestead status,[15] *the wife was*, for the reasons to be stated in Part C, *legally disabled* to press against her cotenant-husband for the land's sale.

## C.

### *The Divorced Wife's Plea For Non-recognition Of Her Cotenant's Homestead–Status Protection Is An Act In Derogation Of His Rights*

¶ 14 The wife interposed no superior legal interest or compelling equity that would defeat the husband's decree-conferred claim

---

*relationship or status."* John M. Cartwright, GLOSSARY OF REAL ESTATE LAW 270 (1972) (emphasis supplied). For an in-depth discussion of the term, see *Sharon v. Sharon*, 75 Cal. 1, 16 P. 345, 370 (1888) (Thornton, J., dissenting) (where it is said that *"[d]erogation* is ... the act of taking away or destroying the value or effect of anything, or of limiting its extent, or of restraining its operation"). (Emphasis in original.)

10. *Rex Oil Refining Inc. v. Shirvan*, 1967 OK 127, 443 P.2d 82, 87 (cotenants stand to each other in a relation of mutual trust and confidence; *neither will be permitted to act in hostility to the other in reference to the joint estate*); *Wallace v. Brooks*, 194 Okl. 137, 147 P.2d 784, 790 (1944) (an outstanding adversary title acquired by a cotenant inures to the benefit of the other cotenants); *Burt v. Steigleder*, 132 Okl. 217, 270 P. 54, 55–56 (1928) (a purchase of an outstanding adverse title by a cotenant *will be held in equity to have been made for and on behalf of all the cotenants*); *Arthur v. Coyne*, 32 Okl. 527, 122 P. 688, 690 (1912).

11. *Rex*, supra note 10 at 87; *Wallace, supra* note 10 at 790; *Burt, supra* note 10, 270 P. at 55–56; *Arthur, supra* note 10, 122 P. at 690.

12. *In re Carothers' Estate*, 196 Okl. 640, 167 P.2d 899, 903 (1946); *Brooks v. Butler*, 184 Okl. 414, 87 P.2d 1092, 1095–96 (1939); *Finerty v. First*

*Nat. Bank* 92 Okl. 102, 218 P. 859, 863 (1923). Homestead status is an incident of the holder's title which serves to protect the land and those who occupy it from sale on execution.

13. *Rex*, supra note 10 at 87; *Wallace, supra* note 10 at 790; *Burt, supra* note 10 at 55–56; *Arthur, supra* note 10 at 690.

14. If the plaintiff cannot prove his title to the property in contest, his adversary's equally deficient title will not do as a basis for plaintiff's recovery. The plaintiff must recover on the strength of his own title, not on the want or weakness of defendant's title. *Wood v. Sympson*, 1992 OK 90, 833 P.2d 1239, 1248 (quiet title); *Atlantic Richfield Co. v. State ex rel. Wildlife Conservation Com'n*, 1983 OK 15, 659 P.2d 930, 934–935 (quiet title); *Dearing v. State ex rel. Com'rs of Land Office*, 1982 OK 5, 642 P.2d 226, 229 (quiet title); *Gill v. Giacomo*, 1971 OK 87, 487 P.2d 1171, 1175 (ejectment action); *Sickles v. Edmonds*, 1954 OK 179, 271 P.2d 717, 718 (replevin of automobile).

15. We need not decide today whether the lien of a child support judgment, held by one who is a stranger to the obligor's title, may be impressed upon and executed against the debtor's homestead.

to the affected land. *Her attempt to diminish the effect of his homestead-status protection by interposing the commuted child support judgments is clearly an act in derogation of the husband's rights.* Because she is a tenant in common in the contested premises, *she cannot—in her quest to prevail on the strength of her own interest—diminish the extent of protection conferred by law on his homestead.*[16]

## D.

### The Divorced Wife Is Bound To Recognize Her Former Husband's Homestead Status To The Very Same Extent He Would Have Been Bound If He Were Her Judgment Creditor

¶ 15 The wife was a co-architect of the agreed ownership regime conferred by the post-divorce quiet-title decree. By its terms each party retained an undivided one-half interest in the property. She stands bound by the conceded-to-the-husband homestead status to the very same extent he would have been bound if he were her judgment creditor. *So long as the cotenancy regime subsists, neither of them is free to act or claim in derogation of the other's homestead status.*[17]

## IV

¶ 16 **THE PRECEDENT RELIED UPON BY THE COURT OF CIVIL APPEALS (AND BY THE DIVORCED WIFE) IS DISTINGUISHABLE AND INAPPOSITE**

¶ 17 The wife's plea for sale of the husband's homestead on execution relies on clearly inapposite Oklahoma jurisprudence. The authorities she cites are factually dissimilar from today's case. This contest deals with property held by the divorced spouses as *tenants in common.* Their ownership regime rests upon an agreed divorce settlement that stands redefined and confirmed by a later quiet-title decree.

¶ 18 In *Burrows v. Burrows*[18] the divorced wife brought an action against her former husband under the Uniform Fraudulent Transfer Act [UFTA] to set aside his home's conveyance to his parents as a fraudulent transfer to avoid payment of past-due alimony and child support. *The homestead had been awarded to the husband as his separate property free and clear of any control or domination by the wife.*[19] The court reversed summary judgment for the husband, holding that *under the facts presented* (a) the husband's attempt to convey the homestead away in an effort to avoid past-due support alimony and child support may be held fraudulent under the UFTA and (b) his homestead exemption may not be used *in that context* to defeat the enforcement of the decreed obligation for past-due alimony and child support.[20] *Burrows* provides no support for a sale on execution upon the homestead where (a) no fraudulent transfer is implicated and (b) *title to the homestead is held in cotenancy under the unmistakable terms of an earlier quiet-title decree.*

¶ 19 *Abrego v. Abrego,*[21] the other authority invoked, also is distinguishable from the case at bar. There the court held that a first-priority lien may be placed on the proceeds of an obligor-spouse's pre-existing life insurance policy to ensure payment of unpaid child support.[22] Reliance on *Meadows v. Meadows*[23] and *Commons v. Bragg*[24] is likewise misplaced. *Meadows* teaches that workers' compensation awards and social security disability payments are not exempt from claims for alimony and child support by

16. *Rex,* supra note 10 at 87; *Wallace,* supra note 10 at 790; *Burt,* supra note 10 at 55–56; *Arthur,* supra note 10 at 690.

17. *Rex.* supra note 10 at 87; *Wallace,* supra note 10 at 790; *Burt,* supra note 10 at 55–56; *Arthur,* supra note 10 at 690.

18. 1994 OK 129, 886 P.2d 984.

19. *Burrows, supra* note 18 at 985–86.

20. 24 O.S.1991 § 116. *Burrows, supra* note 18 at 988 n. 14; *Sims v. Sims,* 150 Okl. 138, 300 P. 692, 695–96 (1931).

21. 1991 OK 48, 812 P.2d 806.

22. *Id.* 812 P.2d at 813.

23. 1980 OK 158, 619 P.2d 598.

24. 183 Okl. 122, 80 P.2d 287 (1938).

the worker's former spouse. Resting its decision on public-policy considerations, the court opined in *Meadows* that the wife was neither a creditor nor was her claim a debt *within the purview of the compensation law's exemption statute.*[25] *Commons* similarly deals with a divorced wife's efforts to execute upon her former spouse's compensation award for the satisfaction of child support and alimony.[26]

¶ 20 Lastly, we deem *Hensley v. Maxwell*[27] unsupportive of the wife's position. *Hensley* deals with a transfer of land which was purchased before marriage. The issue before the court was whether homestead status had been impressed upon the land there in contest. Because the title was solely in one party, the court was not concerned, as it must be here, with whether the sale of the property on execution would be in derogation of a cotenant's rights in his homestead.

¶ 21 This controversy is not about the use of homestead status to shield land from sale on execution, but rather whether one cotenant (wife) can act or claim in derogation of another cotenant's validly conferred and *conceded homestead interest* in cotenancy estate. In none of the cases drawn to our attention was the property in dispute owned by the parties litigant *qua* cotenants. In sum, all the cited authorities are distinguishable from, and hence not dispositive of, the issue here— *i.e.*, whether a divorced spouse's homestead-status protection—resting, as it does, upon *an agreed ownership regime of cotenancy,* may be diminished by the wife's child-support judgments.

## V

### SUMMARY

¶ 22 One who stands in a cotenancy relation to another is not allowed to lessen or diminish the value or effect of the other cotenant's right, title, interest or status in the land. *The wife, qua tenant in common, cannot act or claim in derogation of the protections inherent in the husband's homestead status.*[28]

¶ 23 In her plea for sale on execution the wife bore the ultimate burden. She must prevail, if at all, on the strength of her own right rather than on the weakness of that pressed by her former husband. She has failed to show either a legal interest or compelling equity that is superior to his homestead-status protection founded on the existing cotenancy regime.[29]

¶ 24 On certiorari granted upon the husband's petition, the Court of Civil Appeals' opinion is vacated, the trial court's orders are reversed and the cause stands remanded for disposition not inconsistent with this court's pronouncement.

¶ 25 SUMMERS, V.C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE, OPALA, ALMA WILSON and WATT, JJ., concur.

¶ 26 KAUGER, C.J., concurs in result.

**25.** 85 O.S.Supp.1994 § 48; *Meadows,* supra note 23, 619 P.2d at 600, citing *Commons, supra* note 24 at 290.

**26.** *Commons, supra* note 24 at 290.

**27.** 172 Okl. 21, 44 P.2d 60, 62 (1935).

**28.** *Rex, supra* note 10 at 87; *Wallace, supra* note 10 at 790; *Burt, supra* note 10 at 55–56; *Arthur, supra* note 10 at 690.

**29.** Since this controversy's very inception the divorced husband has asserted that his ownership interest in the land stands protected by homestead status. Although his lawyer's argumentation is not identical to that advanced in this opinion, today's analysis, which serves as the pronouncement's predicate, is fairly comprised in the homestead-status recognition he sought at nisi prius.