## 44299. DAOPOULOS v. DAOPOULOS.
### (354 SE2d 828)

GREGORY, Justice.

We granted the husband's application to appeal. He was held to be in arrears in payment of permanent periodic alimony to the wife awarded in their divorce decree. The trial court relied on *Wiley v. Wiley*, 243 Ga. 271 (253 SE2d 750) (1979), and held the divorce decree provided that remarriage of the wife did not terminate the obligation to pay alimony. We affirm but lay down a new rule for prospective application.

The issue before us is whether the provision in the divorce decree requiring payment of permanent periodic alimony until the children reach the age of 18 avoids application of the usual rule that obligations for permanent alimony, the time for performance of which has not arrived, terminate upon remarriage of the one to whom the obligations are owed.

The February 5, 1985 divorce decree incorporated the parties' earlier separation agreement. It required husband to pay wife a total of $300 per month child support for their two children, and $500 per month alimony for wife. It provided, "the husband shall continue said child support payments and alimony until the children reach the age of eighteen (18) years." Pro rata reduction in child support and 50 percent reduction in alimony for wife was to occur upon the oldest child reaching 18. Wife remarried before either child reached 18. Husband stopped paying alimony to wife on account of her remarriage.

She brought this contempt action. While the trial judge did not find contempt because of the lack of wilfulness, husband was held to owe alimony payments which accrued since wife's remarriage. That is, it was held remarriage did not terminate alimony because the decree provided otherwise.

The statute we apply is OCGA § 19-6-5 (b): "All obligations for permanent alimony, however created, the time for performance of which has not arrived, shall terminate upon remarriage of the party to whom the obligations are owed *unless otherwise provided.*" (Emphasis supplied.) A few years back this court considered the same issue we now face. *Wiley,* supra. There it was concluded that a decree similar to the one at hand provided otherwise so that remarriage did not terminate the alimony obligation. We think that was a correct determination. The facts before us now are thinner. We have less to aid us in gauging whether it has been otherwise provided. But we do not distinguish *Wiley.* The trial court correctly applied its rationale to the language of this decree. However, because we view the rationale of *Wiley* as likely to miss the mark in many instances of finding the true meaning of instruments awarding permanent alimony we lay down a new rule.

Had the drafter of the agreement squarely faced the issue undoubtedly there would have been an expression clearly conveying to the reader whether remarriage would terminate the alimony obligation. It might have been provided that remarriage of wife would terminate the alimony obligation notwithstanding reference to age 18 of the children. Just the opposite result might have been expressed. There lies the problem. The words used here leave us unconvinced as to meaning. It could be the parties contemplated the prospect of remarriage but considered that the document "provided otherwise" because age 18 was to be the terminator and the only terminator. Just as likely, they contemplated remarriage and considered that the absence of express reference to that subject would leave the statute to do its work. It may be the parties never thought of remarriage. How can we know? The words used do not really tell us. For instance, suppose the children died before reaching age 18. Would alimony never terminate? Suppose A is to pay B periodic alimony of $400 per month for five years? Has it been provided otherwise? What if the obligation is for five years at $400 per month and $500 per month thereafter? Suppose A is to pay B periodic alimony of $400 per month until A dies? What if A is to pay $400 per month permanent alimony to B until B is 60 years old? Suppose A is to pay B $400 per month permanent alimony so long as B earns less than $600 per month? What if A is to pay permanent alimony to B equal to 50 percent of the value of dividends paid A on stock X so long as they are paid? There is no end to the possibilities which inclines us to adopt a rule for as much cer-

tainty as we can reasonably require.

Hereafter in order for a court to hold that an instrument "provides otherwise" than the general rule that remarriage terminates permanent alimony obligations within the meaning of OCGA § 19-6-5 (b) it must expressly refer to remarriage of the recipient and specify that event shall not terminate the permanent alimony obligations created thereby. The language must be clear and unequivocal. The rule of *Wiley*, supra, will no longer be followed.

In keeping with the approach taken in *Varn v. Varn*, 242 Ga. 309 (248 SE2d 667) (1978), this rule will apply to permanent alimony obligations created after June 25, 1987, the date on which this opinion is published in the Georgia Advance Sheets.

*Judgment affirmed. All the Justices concur, except Smith, J., who concurs in the judgment only.*

DECIDED APRIL 15, 1987 —
RECONSIDERATION DENIED MAY 6, 1987.

*Glenda L. Sullivan*, for appellant.

*Davis, Brofman, Zipperman & Kirschenbaum, Rhonda A. Brofman*, for appellee.