2007 OK 47

In re the Marriage of Wayne E. BUR-RELL, Petitioner/Appellant,

v.

Brenda D. BURRELL, now Webb, Respondent/Appellee.

No. 102,470.

Supreme Court of Oklahoma.

June 12, 2007.

Jim Pearson, Jim Pearson, P.C., Oklahoma City, OK, for petitioner/appellant.

Sue E. Buck, Hugo, OK, for respondent/appellee.

WATT, J.

¶ 1 Certiorari was granted to address a single issue. The question presented is whether support payments are subject to termination on remarriage under a Georgia divorce decree requiring payment of support until the death of the wife.

¶ 2 We hold that the support alimony provision providing for payment of support until the wife's death terminates the husband's duty to make alimony payments upon the wife's remarriage under both Georgia[1] and Oklahoma statutory and jurisprudential law.[2]

1.  Ga.Code (1982), § 19–6–5(b) providing:
    "All obligations for permanent alimony, however created, the time for performance of which has not arrived, shall terminate upon remarriage of the party to whom the obligations are owed unless otherwise provided."
    *Metzler v. Metzler*, 267 Ga. 892, 485 S.E.2d 459–60 (1997) [Where alimony is terminal on death of either husband or wife, "otherwise provided" of statute requires clear and unequivocal language expressly referring to remarriage of the party and specifying that event shall not terminate the permanent alimony obligation.]; *Edwards v. Benefield*, 260 Ga. 238, 392 S.E.2d 1 (1990) [Use of word "permanently" in conjunction with requirement to make alimony payments is insufficient under statute to meet exception requiring termination of alimony obligations upon remarriage "unless otherwise provided."]; *Daopoulos v. Daopoulos*, 257 Ga. 71, 354 S.E.2d 828–29 (1987) [Requirement to make alimony payments to a date certain is insufficient to meet the "otherwise provided" strictures of the statute requiring termination of alimony upon remarriage. Instrument must expressly refer to remarriage of recipient and specify that event shall not terminate permanent alimony obligations in clear and unequivocal language.].

2.  Title 43 O.S.2001 § 134(B) providing in pertinent part:
    "The court shall also provide in the divorce decree that upon the death or remarriage of the recipient, the payments for support, if not already accrued, shall terminate. . . . Upon proper application the court shall order payment of support terminated and the lien discharged after remarriage of the recipient, unless the recipient can make a proper showing that some amount of support is still needed and that circumstances have not rendered payment of the same inequitable, provided the recipient commences an action for such determination, within ninety (90) days of the date of such remarriage."
    *Dickason v. Dickason*, 1980 OK 24, ¶ 2, 607 P.2d 674 [Considering a prior statute containing language virtually identical to the current statute, the Court held that spouses entering into an agreement for amount of support alimony would not be presumed to intend that their obligation be clothed with attributes of nonterminability on obligee's remarriage.]; *Batchelor v. Batchelor*, 1978 OK 135, ¶ 10, 585 P.2d 1120 [To the same effect.]. The wife does not assert that she met the statutory requirement of filing a request for the continuance of alimony within 90 days of the date of the remarriage. *Kildoo v. Kildoo*, 1989 OK 6, ¶ 10, 767 P.2d 884 [Recipient of support alimony must commence action seeking continuation within 90 days of remarriage and is not entitled to extension of the 90–day period even if recipient misconstrues the divorce decree or misunderstands the legal consequences of failure to commence such an action.]. See also, *Younge v.*

The alignment of Georgia and Oklahoma law extinguishes any necessity to discuss full faith and credit,[3] comity[4] or public policy arguments.[5]

## FACTS AND PROCEDURAL HISTORY

¶3 On September 20, 1997, the parties were divorced. The Georgia decree incorporated the agreement of the parties that: 1) the husband would pay the wife support alimony on the fifteenth of each month "until the Wife dies;"[6] and 2) the agreement, its application and interpretation should be governed "exclusively by the laws of the State of Georgia."[7]

¶4 After the divorce, the husband moved to Michigan and the wife relocated to Oklahoma, where she remarried on May 31, 2003. Almost six months later, on November 21, 2003, the husband registered the Georgia decree in the District Court of Choctaw County pursuant to the Uniform Enforcement of Foreign Judgments Act, 12 O.S.2001 § 719, et seq. The husband filed a petition to terminate the support obligation on January 16, 2004. He asserted that the wife had failed to make an application for continued support within 90 days of her remarriage as required by 43 O.S.2001 § 134(B)[8] and that, pursuant to Georgia law, the support obligation terminated upon the wife's remarriage. In response, the wife filed a motion for the declaration of her rights under the foreign divorce decree asserting that Oklahoma law should apply and that the alimony payments should continue despite her remarriage.

¶5 By agreement of counsel, the cause was submitted to the trial court on the pleadings and the briefs. The trial court found that: application of the choice of law provision contravened Oklahoma's fundamental policy

*Younge*, 2002 OK 12, ¶16, 41 P.3d 966 [Providing for lien which would secure only amount of alimony obligation upon death of either party or recipient of alimony would not extend support alimony obligation beyond statutorily circumscribed contingencies.].

3. The United States Const. Art. 4, § 1 providing in pertinent part:
"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State...."

4. In *Myatt v. Ponca City Land & Improvement Co.*, 1903 OK 15, ¶9, 78 P. 185, comity was defined as follows:
"... [C]omity of nations is defined as 'the courtesy by which nations recognize within their own territory, or in their own courts, the peculiar institutions of another nation, or the rights and privileges acquired by its citizens in their own land....' '[T]he most appropriate phrase to express the true foundation and extent of the obligation of the law of one nation within the territory of another. It is derived altogether from the voluntary consent of the latter, and it is inadmissible when it is contrary to its known public policy or prejudicial to its interests....'"

5. Both parties pose arguments based on the full faith and credit clause, United States Const. Art. 4, § 1, see note 3, supra, and public policy which they assert support their positions. Although we have recognized that 43 O.S.2001 § 134(B), see note 2, supra, represents a statement of Oklahoma's public policy [*Younge v. Younge*, see note 2, supra], these contentions bear little merit. In *Dean Witter Reynolds, Inc. v. Shear*, 1990 OK 67, ¶1, 796 P.2d 296, the court determined that, in the face of an enforceable choice-of-law provision, a party could not invoke Oklahoma's fundamental law to challenge the validity of the contract's arbitration clause. When courts have refused to enforce judgments on public policy grounds, it has occurred only in exceptional cases. *Panama Processes, S.A. v. Cities Service Co.*, 1990 OK 66, ¶10, 796 P.2d 276. We recognized in *Willhite v. Willhite*, 1976 OK 17, ¶4, 546 P.2d 612 that a Texas divorce judgment, correctly recorded pursuant to the Uniform Enforcement of Foreign Judgments Act, was enforceable in Oklahoma courts. See also, *Clark v. Clark*, 1962 OK 116, ¶0, 380 P.2d 241 [Texas divorce decree providing for periodic payments of child support entitled to full faith and credit in Oklahoma courts.].

6. The agreement signed by both parties on June 19, 1997, providing in pertinent part at ¶6:
"ALIMONY
Husband shall pay to Wife alimony in the sum of Three Thousand Three Hundred Dollars (3,300.00) per month beginning on the fifteenth day of the month following the execution of this Agreement and on the fifteenth day of each month thereafter until the Wife dies...."

7. The agreement signed by both parties on June 19, 1997, providing at ¶14:
"APPLICATION OF GEORGIA LAW
This agreement and the application and interpretation thereof shall be governed exclusively by the laws of the State of Georgia."

8. Title 43 O.S.2001 § 134(B), see note 2, supra.

favoring settlements and compromises; Oklahoma law should apply because of the lack of a substantial relationship between the parties and Georgia; and the right to terminate support alimony was waived by the provision in the agreement providing that the husband should pay support until the wife's death. In an opinion promulgated on September 22, 2006, the Court of Civil Appeals read the term "only" into the settlement,[9] agreeing with the trial court's analysis and affirming the judgment. · The appellate court denied rehearing on November 13, 2006. We granted certiorari on March 12, 2007.

¶ 6 **UPON THE WIFE'S REMARRIAGE SUPPORT ALIMONY DESIGNATED AS PAYABLE UNTIL THE WIFE'S DEATH IS SUBJECT TO TERMINATION UNDER BOTH GEORGIA AND OKLAHOMA STATUTORY LAW AND JURISPRUDENCE.**

¶ 7 Despite the provision in the agreement calling for the application of Georgia law, the wife asserts that the cause should be governed by 43 O.S.2001 § 134(B)[10] and the jurisprudence which interprets the statutory provision.[11] The wife contends that, when the agreement is measured by these standards, the husband's duty to continue to pay support survives her remarriage. Conversely, the husband argues that his support obligation has been extinguished under both Georgia and Oklahoma law. We agree that the husband's argument is convincing under both states' statutes and jurisprudential standards.

### a. Analysis of Georgia statute and caselaw.

■ ¶ 8 The applicable Georgia statutory provision is Ga.Code 1982 § 19–6–5. It provides in pertinent part:

"... (b) All obligations for permanent alimony, however created, the time for performance of which has not arrived, shall terminate upon remarriage of the party to whom the obligations are owed unless otherwise provided...."

The Georgia Supreme Court has specifically addressed the "otherwise provided" language of the statute. In *Daopoulos v. Daopoulos*, 257 Ga. 71, 73, 354 S.E.2d 828 (1987), it held that, in order to avoid the general rule of termination of support on remarriage, **the agreement must expressly refer to the remarriage of the recipient and specify that the event shall not terminate the permanent alimony obligations.** Here, the language of the alimony provision provides only that the alimony will continue until the wife's death. It does not, as *Daopoulos* requires, address the remarriage issue nor does it provide that, in such an event, alimony will continue.

¶ 9 Georgia's highest court has remained faithful to *Daopoulos.* The appellate court has determined that utilization of the term "permanently" in association with alimony obligations is insufficient to require continued payment after remarriage.[12] Particularly instructive here are *Findley v. Findley,* 280 Ga. 454, 629 S.E.2d 222 (2006) and *Met-*

---

9. *Chiles v. Chiles,* 1989 OK CIV APP 48, ¶ 7, 778 P.2d 938 [Use of word "only" delineated sole contingency under which spousal support would terminate.]. Opinions released for publication by order of the Court of Civil Appeals are persuasive only and lack precedential effect. Rule 1.200, Supreme Court Rules, 12 O.S.2001, Ch. 15, App. 1; 20 O.S.2001 §§ 30.5 and 30.14.

10. Title 43 O.S.2001 § 134(B), see note 2, supra.

11. The wife asserts that the husband may not rely on Georgia law because his sole request for relief in the trial court came from a reliance on 43 O.S.2001 § 134(B), see note 2, supra. The argument is unconvincing. The very language which the wife quotes as demonstrative of the husband's failure to rely on Georgia law fairly comprises the issue of its application. The quotation, located at p. 4 of the Appellee's Answer Brief, provides:

"Wayne did not seek the trial court to apply Georgia law, Indeed, he asserted:
The choice of law issue is a legal discussion without significance to the outcome of this discussion. Whether Georgia's automatic termination or Oklahoma's provision for asking for continuation is used, the conclusion is the same...."

An argument need not be artfully drawn as long as it is fairly comprised within the pleadings presented to the trial court. See, *Matthews v. Matthews,* 1998 OK 66, ¶ 23, 961 P.2d 831; *Gray v. Holman,* 1995 OK 118, ¶ 9, 909 P.2d 776; *Morrow Development Corp. v. American Bank & Trust Co.,* 1994 OK 26, ¶ 9, 875 P.2d 411.

12. *Edwards v. Benefield,* see note 1, supra.

*zler v. Metzler*, 267 Ga. 892, 485 S.E.2d 459 (1997). In *Findley*, the Georgia court determined that the obligation to pay support terminated upon the death of the obligor unless there was a clear expression of intent to extend payments beyond death. More importantly, in *Metzler*, **where the support provision provided that alimony would terminate upon the death of either party, the language was held insufficient to preserve the wife's right to support after she remarried.**

¶ 10 Here, the alimony provision merely provides that the wife is entitled to receive alimony payments until her death.[13] There is no reference in the agreement regarding the wife's remarriage, nor any indication that alimony should continue beyond that event. Undoubtedly, when measured by Georgia statutory and jurisprudential standards, the wife is not entitled to continued alimony payments subsequent to her remarriage.

**b.    Application of Oklahoma statutory and jurisprudential standards.**

¶ 11 The clear, explicit, unmistakable and mandatory[14] language of 43 O.S. 2001 § 134(B)[15] directs trial courts to provide in divorce decrees that, upon death or remarriage of the recipient, unaccrued alimony payments shall cease. Recipients may avoid termination of alimony payments if, within 90 days of the date of the wedding, they commence an action to demonstrate that the alimony is still needed and that the circumstances have not rendered payment inequitable.

¶ 12 The wife relies on *Stuart v. Stuart*, 1976 OK 107, 555 P.2d 611, for the proposition that if a decree contains no indication that the parties intend that support terminate on death or remarriage of the wife, the same remains payable. Because *Stuart* is distinguishable on its facts, the reliance is misplaced.

¶ 13 The *Stuart* Court held that the evidence supported a finding that the decree was a consent decree which could not be modified and should not result in termination of support on death or remarriage. Nevertheless, in *Stuart*, the property settlement agreement did not designate whether the alimony payment, or any portion thereof, was support alimony or alimony in lieu of property division. Here, there is no such ambiguity. The agreement clearly designates the alimony as such and contains a separate provision encompassing the division of property.[16]

¶ 14 The duty of the husband to make continuing support payments is not required under Oklahoma law for multiple reasons. First, the wife did not commence any action in an attempt to demonstrate her continued need or the husband's ability to pay the awarded monthly support. We considered almost identical statutory language[17] in *Kildoo v. Kildoo*, 1989 OK 6, 767 P.2d 884. In so doing, we determined that **the ninety day period would not be extended either because the recipient misconstrued the di-**

---

**13.** See the relevant provision of the agreement signed by both parties on June 19, 1997, note 6, supra.

**14.** Generally, the use of "shall" signifies a legislative command. *Barzellone v. Presley*, 2005 OK 86, ¶ 35, 126 P.3d 588; *Cox v. State ex rel. Oklahoma Dept. of Human Services*, 2004 OK 17, ¶ 21, 87 P.3d 607; *United States through Farmers Home Admin. v. Hobbs*, 1996 OK 77, ¶ 7, 921 P.2d 338. Nevertheless, there may be times when the term is permissive in nature. *Barzellone v. Presley*, this note, supra; *Minie v. Hudson*, 1997 OK 26, ¶ 7, 934 P.2d 1082; *Texaco, Inc. v. City of Oklahoma City*, 1980 OK 169, ¶ 9, 619 P.2d 869.

**15.** Title 43 O.S.2001 § 134(B), see note 2, supra.

**16.** We have upheld the continuation of alimony payments where the language of the decree clearly indicated that the statutory termination provision was waived. Such a waiver was found in *Perry v. Perry*, see note 18, infra, in which the decree provided that payment should continue until the wife's death "notwithstanding provisions of the statute to the contrary."

**17.** Title 12 O.S. Supp.1987 § 1289(B), providing:

"Upon proper application the court shall order payment of support terminated and the lien discharged after remarriage of the recipient, unless the recipient can make a proper showing that some amount of support is still needed and that circumstances have not rendered payment of the same inequitable, provided the recipient commences an action for such determination, within ninety (90) days of the date of such remarriage."

vorce decree or misunderstood the legal consequences of failing to commence such an action. Here, the wife did not commence an action in an attempt to require continuation of the support payments. Rather, she merely defended the husband's suit to terminate payment, which was filed well outside the ninety day period of the statutory provision.

¶ 15 Second, the language of the decree, considered in light of Oklahoma jurisprudence, is insufficient in and of itself to support continued payments following the wife's remarriage. Although we have upheld the continued payment of alimony where the statutory protections are clearly waived by agreement of parties or otherwise,[18] we have refused to require continued support payments following remarriage where: 1) the divorce decree was silent as to the parties intent *vis a vis* the requirement for payments to continue following the recipient's remarriage;[19] and 2) the consent decree incorporating language denominating payment as support did not contain clear language indicating that payments would not terminate upon remarriage and the recipient did not commence an action for continued payment within ninety days of the remarriage.

¶ 16 In the instant cause, the decree requires the husband to make support alimony payments until the wife's death. **It contains no language relating to the wife's remarriage or indicating that the statutorily** based termination conditions of 43 O.S. 2001 § 134(B)[20] **are waived.** Therefore, we hold that neither the statute nor our jurisprudence support continued alimony payments to the wife following her remarriage.

## CONCLUSION

 ¶ 17 This Court is duty bound to give effect to legislative acts, not to amend, repeal or circumvent them. No matter how sympathetic we might be to a party, we are without authority to rewrite a statute merely because the legislation does not comport with our conception of prudent public policy.[21] Both Oklahoma and Georgia statutes and the respective jurisprudence of each state support termination of the support alimony obligation. Therefore, we reverse the trial court and remand for proceedings consistent with this opinion.

### COURT OF CIVIL APPEALS OPINION VACATED; REVERSED AND REMANDED.

ALL JUSTICES CONCUR.

---

**18.** *Perry v. Perry,* 1976 OK 57, ¶ 2, 551 P.2d 256 [Language indicating that alimony payments shall not be dischargeable "other than" upon the death of the wife "notwithstanding provision of the statute to the contrary" sufficient to waive the termination of alimony upon remarriage provision.].

**19.** *Dickason v. Dickason,* see note 2, supra; *Batchelor v. Batchelor,* see note 2, supra.

**20.** See, 43 O.S.2001 § 134(B), note 2, supra.

**21.** *Boston Ave. Mgt., Inc. v. Associated Resources, Inc.,* 2007 OK 5, ¶ 11, 152 P.3d 880; *Head v. McCracken,* 2004 OK 84, ¶ 13, 102 P.3d 670; *Duncan v. Oklahoma Dept. of Corrections,* 2004 OK 58, ¶ 5, 95 P.3d 1076..